**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | |
|---|---|
| IN RE NEW MOTOR VEHICLES ] <br>    CANADIAN EXPORT ANTITRUST ] <br>    LITIGATION ] | MDL DOCKET NO. 1532 |

**ORDER ON PLAINTIFFS' MOTION TO STAY A RESPONSE TO GENERAL MOTORS' MOTION FOR SUMMARY JUDGMENT**

The issue here is whether to entertain now, in the midst of an otherwise carefully planned schedule for managing this case, a defendant's summary judgment motion whose timing caught everyone by surprise. I conclude that the correct answer is "No." I **GRANT** the plaintiffs' motion to stay action on the motion. To explain why, I begin with a description of previous proceedings, to give a flavor of their complexity and the need for judicial management.

**PREVIOUS PROCEEDINGS**

On June 26 and August 12, 2003, the Judicial Panel on Multidistrict Litigation transferred 26 cases to this Court from around the country. The cases involve federal and state antitrust claims, state consumer protection claims, and claims for unjust enrichment, all growing out of allegations that car manufacturers, dealers and trade associations improperly restrict the entry of Canadian cars into the American market. Currently there are 23 defendants, 57 plaintiffs (seeking class status), and the service list includes 68 lawyers. By a procedural order dated July 31, 2003, all discovery was immediately stayed until an initial pretrial conference could be held. Practice and Procedure Order Upon

Transfer, ¶ 12 (Docket Item 3). I made clear that I would follow the procedures of the Manual for Complex Litigation (Third) (now Fourth). Id. ¶ 13.

The first conference was held September 26, 2003. At that time, the defendants' lawyer spoke of the cases as a "monster" and told me that with over seventy pending lawsuits, coordination with state courts was imperative so that the state cases not "get out ahead of whatever schedule we adopt here." Transcript of September 26, 2003, Conference of Counsel 24:12 to 26:15. The defendants' lawyers expressed their strong interest in having the case move forward in planned stages. Id. 39:5 to 41:24.

On October 1, 2003, the plaintiffs filed a Consolidated Amended Complaint. On October 3, 2003, I entered a Stipulated Protective Order to protect such matters as the defendants' confidential competitive and financial information. On October 7, 2003, I appointed liaison counsel for the plaintiffs and liaison counsel for the defendants.

Substantial discussion ensued on how to coordinate these consolidated federal multidistrict proceedings with a variety of parallel state court proceedings. The discussions went forward in lawyer correspondence and telephone calls among themselves and with the Court, conferences of counsel with the Court, status reports, and correspondence by me with state judges and telephone calls and a visit with one of them.

In the meantime, motion practice was proceeding in the form of motions to dismiss on a variety of grounds. On November 17, 2003, I expressed in a written order my concern over the repetitiveness of the defendants' filings in connection

2

with a motion to dismiss.

Oral argument on the motions to dismiss occurred on January 5, 2004. On March 4, 2004, I granted three defendants' motion to dismiss for lack of personal jurisdiction, deferred action as to one defendant pending some discovery, and denied the motion as to two other defendants. I granted in part and denied in part a separate motion to dismiss for failure to state a claim upon which relief can be granted. The 44 pages it took to rule on the motions are some indication of their difficulty. On April 21, 2004, on the defendants' request I entered a limited certificate for interlocutory appellate review as to the two defendants whose motion to dismiss for lack of personal jurisdiction I had denied. (The court of appeals declined the interlocutory appeal.)

On April 23, 2004, the plaintiffs filed a Second Amended Complaint in response to my ruling on the motion to dismiss for failure to state a claim upon which relief can be granted.

On April 28, 2004, I entered a Joint Coordination Order designed for use in both this federal multidistrict proceeding and in the parallel state court proceedings around the country. It reflected the input of the lawyers and my conferences with Judge Richard Kramer of the California Superior Court. It has subsequently been entered in a number of the state court proceedings as well.

On June 10, 2004, all defendants filed a motion to dismiss some of the claims in the Second Amended Complaint. On that date, certain defendants also filed a motion to decline supplemental jurisdiction over the state law claims and to dismiss the state law claims against the Canadian defendants for lack of personal

3

jurisdiction.

On June 14, 2004, the lawyers for all parties filed a joint proposed schedule for future events, including discovery, that would carry the litigation up through a proposed class certification schedule. A conference of counsel then occurred in court on June 16, 2004. Although it was obvious to everyone that there would be motions for summary judgment at the end of discovery, no one ever suggested that the schedule or the state of the record would permit a summary judgment motion sooner. Having already ruled on two very complex motions to dismiss and with two more such motions, even more complex, pending before me, I certainly would have wanted to discuss the timing of any such additional motions if they had been in anyone's contemplation.[1] But there was no hint of any such motions. On June 16, 2004, I entered a Scheduling Order accordingly, that scheduled events up through the time of setting a class certification schedule. I also notified all the state judges with parallel actions, certainly with no suggestion that summary judgment motions were imminent.

On August 11, 2004, I entered a Master Protective Order. On August 25, 2004, I held oral argument on the second round of motions to dismiss. On September 7, 2004, I denied the motion to dismiss for lack of personal jurisdiction and the motion to decline supplemental jurisdiction. On December 8, 2004, I denied a motion by certain Tennessee state court plaintiffs to intervene solely to

---

[1] I did express my concern over the new motion practice following my previous rulings on motions to dismiss, but determined that it was appropriate in light of dramatic changes in the amended complaint. Transcript of June 16, 2004, Conference of Counsel 10:18 to 11:3. I also made clear *(continued next page)*

4

participate in discovery. On December 8, I also granted in part and denied in part the defendants' motion to dismiss certain state law claims. That 90-page ruling required me to review the antitrust laws of 11 states, the consumer protection laws of 29 states and the District of Columbia, and the common law of unjust enrichment as applied to the state antitrust and consumer protection claims.

On January 26, 2005, Magistrate Judge Kravchuk held a telephone conference of counsel. She permitted the plaintiffs to file a Third Amended Complaint in light of my December 8 ruling, but only upon assurance by the defendants' lawyer that permitting the amendment would <u>not</u> occasion any new substantive motions. Am. Report of Conference of Counsel and Order (Docket Item 188).

On January 27, 2005, the parties asked me to resolve their disagreement over how to structure the class certification debate. On February 11, 2005, I denied a motion for reconsideration of my December 8 ruling on the motion to dismiss, saying that if the motion arguments "have any merit, they can be presented at the stage of summary judgment motion practice." I hardly had in mind that we had almost reached that stage.

On February 15, 2005, I held another conference of counsel. General Motors' lawyer spoke extensively on class certification issues, but made no mention of any summary judgment motions in the offing. All the indications were that the lawyers for all parties were cooperating on discovery and schedule issues.

---

my concern that the litigation as a whole move forward in an orderly and strategic fashion. <u>See id</u>.
*(continued next page)*

I made clear that I did "not want the schedule strung out. We have been at this for quite a while now." Transcript of February 15, 2005, Conference of Counsel 58:14-16.

On February 25, 2005, I entered a procedural order requiring the parties to clarify their positions on whether these cases would remain in Maine after pretrial proceedings. On March 7, 2005, I denied another motion for limited intervention by certain Tennessee state court plaintiffs and denied an attempt by outside counsel to dismiss the Tennessee claims already existing in this case.

On March 11, 2005, the parties filed a stipulation that all these cases would remain in the District of Maine and not be subject to transfer back to their originating districts.

On March 15, 2005, I entered a procedural order permitting the parties to proceed with class certification by designating exemplar classes for the state damages claims. In that order I also scheduled the class certification proceedings up through a December 6, 2005, hearing on the class-certification motion. This schedule was in response to the parties' proposals. I understood that the schedule that they proposed and I adopted was the quickest the parties could move, devoting their full energies to these issues. Under this schedule: both parties were to complete document production by May 13, 2005 and class-certification-related depositions by July 1, 2005; the plaintiffs must disclose their class-certification experts and file their class-certification brief and expert reports

---

10:18 to 14:6.

6

by July 29, 2005; the defendants must complete depositions of the plaintiffs' class-certification experts by August 30, 2005, and disclose their class certification experts and file their opposition brief and expert reports by September 30, 2005; and the plaintiffs must complete depositions of the defendants' experts by October 28, 2005, and file their reply brief and any expert rebuttal report by November 18, 2005. I expected that everyone's attention would be focused on these issues. If I had thought there were time for other matters, I would have shortened the proposed schedule. On March 15, 2005, I also updated all the state judges, again with no reference to contemplated summary judgment practice in the offing.[2]

So it is an understatement to say that I was surprised to receive an electronic notice on June 10, 2005, that General Motors had just filed its motion for summary judgment. There is not yet a discovery deadline. Under the schedule contained in the procedural order of March 15, 2005, class-related discovery is not scheduled to end until October 28, 2005. I had thought that with all the previous motion practice, appointment of liaison counsel, conferences among lawyers and with the judge and magistrate judge, and coordination with state judges, all parties were on the same page on the orderly progress of this complex multidistrict litigation, and that all were now focused on the class certification issue, with summary judgment practice to come later. In some consternation I asked Magistrate Judge Kravchuk to convene an immediate conference of counsel

---

[2] I have not listed various discovery and other conferences that Magistrate Judge Kravchuk held *(continued next page)*

7

to find out what was going on.  After a telephone conference, she permitted the plaintiffs to file a motion to stay their response to General Motors' summary judgment motion.  General Motors has now responded to the plaintiffs' motion to stay, as have defendants Nissan North America and Ford Motor Company.

## ANALYSIS

General Motors says that it has the right to file a motion for summary judgment at any time and without the Court's permission.[3]  Perhaps.  Perhaps I also have the "right" arbitrarily to deny such a motion.  (Denial of summary judgment is an unappealable interlocutory order, except in special cases such as qualified immunity defenses).  But neither is good practice.  My goal as a trial judge is to move cases along to an orderly conclusion with only unavoidable expense and delays, and to treat all substantive issues fairly.  In return, I expect the lawyers to behave with candor and, when we discuss scheduling, to inform me or the magistrate judge what lies ahead, not keep certain cards up their sleeves.

---

with the lawyers.  She assures me that summary judgment was not raised at any of those proceedings.

[3] As Magistrate Judge Kravchuk reported following her June 17, 2005, conference of counsel:
> General Motors takes the position that it is entitled to file a Rule 56 motion at any stage of the proceeding, notwithstanding the court's scheduling order entered after consultation with the parties at the commencement of this proceeding.  Its stated position is that plaintiffs should be able to file a substantive response without any additional discovery, as Fed. R. Civ. P. 11(b)(3) requires the plaintiffs to have the necessary information to withstand this motion in their possession at the time they filed their complaint.  (General Motors does not explain why it waited more than one year to file this particular motion.)

Report of Conference of Counsel and Order (Docket Item 244).  There has been no objection to Magistrate Judge Kravchuk's report.  In its response to the motion to stay, General Motors says that is "is entitled to move for summary judgment 'at any time,' and, if its motion is well-founded, to have judgment in its favor 'rendered forthwith,'" quoting Federal Rule of Civil Procedure 56(b) and (c).  General Motors' Opp'n to Pls.' Mot. to Stay at 2 (Docket Item 248).

8

That is true in the ordinary case; it is even more important in a multidistrict case, where there are a multitude of parties and lawyers, the issues are complex, the expenses are high, and the Court will likely be called upon to approve an attorney's fee request at the end of the case.

In fact, I do not believe that General Motors has the right to file its motion when and how it chooses in the context of this litigation. Federal Rule of Civil Procedure 16 gives a trial judge extensive power over management issues. I can call a conference to "discourag[e] wasteful pretrial activities"[4] and to "establish[] early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a). That was one of the important purposes of the various conferences that I have held in this litigation. At such a conference, I can "take appropriate action, with respect to . . . the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Id. 16(c)(12). That was certainly the situation here. I am also empowered to take action with respect to "the appropriateness and timing of summary adjudication under Rule 56." Id. 16(c)(5).[5] The specificity of that authority limits the parties' power over timing that might otherwise exist under Rule 56. See 3 James Wm. Moore, et al., Moore's Federal Practice ¶ 16.36[3][g][v] (3d ed. 2004) ("judges appear to have authority under Rule 16 to control the timing of the filing of summary judgment motions, and thus to order that they not

9

be filed until a specified juncture in the pretrial period"); see also Julian v. Equifax Check Servs., Inc., 178 F.R.D. 10, 14 (D. Conn. 1998) (because "[s]ummary judgment motions are often the most significant pretrial matters and are typically the most time-consuming motions[,] . . . [i]mposing reasonable limits on when they may be filed . . . is critical for the scheduling of trial in individual cases and the management of the entire docket").

Implicitly the parties and I dealt with that timing issue in a schedule that did not contemplate summary judgment motions until later.[6] Such a schedule "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge," Fed. R. Civ. P. 16(b), and the "order shall control the subsequent course of the action unless modified by a subsequent order," id. 16(e). General Motors did not make any request to deviate from the schedule proposed and entered. Indeed, other defendants were unaware that summary judgment motions could be filed now and have stated that if General Motors gets to have its motion heard, they want to file such motions as well. (So much for the scheduling order and the Court's attempt to manage the litigation.) Moreover, had I been alerted that there were legitimate

---

[4] According to the Manual for Complex Litigation, "Motion practice can be a source of substantial cost and delay." Manual for Complex Litigation (Fourth) § 11.32 (2004).

[5] Rule 16(b) also authorizes a scheduling order "that limits the time . . . to file motions."

[6] Although summary judgment practice is not limited to the close of discovery under Rule 56, that is generally when it is most useful. By then the plaintiffs have whatever information there is to resist the motion and do not need to request a Rule 56(f) delay. General Motors suggests that it would be agreeable to some delay while discovery focuses on the issues raised by its motion. That might have been a useful proposal at a conference of counsel when we were establishing the schedule for class certification; now it would simply be disruptive.
*(continued next page)*

summary judgment motions that needed to be heard before the close of discovery, I would have wanted discussion of delaying the class certification schedule. One of the issues at stake is always which should come first, dispositive motions or class certification, given the different collateral consequences. I would have wanted discussion of the basis for the motion, whether discovery should be focused or limited to deal with its issues first, and its effect on the rest of the schedule. See Manual for Complex Litigation (Fourth) § 11.34. None of that occurred. Instead, I received a stealth motion.

In short, General Motors should not have filed its motion. Alternatively, it should have alerted the Court and the other parties at earlier opportunities that a summary judgment motion would be in order before class certification. Alternatively still, if the idea dawned late upon it, General Motors should have requested permission to introduce this addition into the schedule.[7] I therefore **GRANT** the plaintiffs' motion to stay action on General Motors' summary judgment motion.[8]

Let there be no mistake. This litigation is difficult and complex enough without surprises. I expect no more.

---

As should be apparent, I am granting the motion to stay because it is not time for summary judgment practice under the scheduling order, not because of the plaintiffs' inability to respond to the summary judgment motion. There is thus no need for a Rule 56(f) delay.

[7] I would entertain imposing sanctions against General Motors under Rule 16(f), but for the fact that the scheduling order fails to state expressly that "No summary judgment motions shall be filed until . . . ."

[8] I recognize that if I denied the summary judgment motion there would be nothing to appeal. By granting the stay, I open myself to possible mandamus. If General Motors truly believes that it has the right to determine the schedule in this case, it can seek mandamus relief in the court of appeals. Otherwise, the scheduling of such motions will be on the agenda after the class certification is resolved.

**SO ORDERED**.

**DATED THIS 12TH DAY OF JULY, 2005**

                                                  /s/D. Brock Hornby
                                                  **D. BROCK HORNBY**
                                                  **UNITED STATES DISTRICT JUDGE**

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CIVIL DOCKET FOR CASE #: 2:03-MD-1532-DBH**

### Liaison Counsel

**For Plaintiffs**
Robert S. Frank
Harvey & Frank
P.O. Box 126
Portland, ME  04112
(207) 775-1300

**For Defendants**
William J. Kayatta, Jr.
Pierce Atwood
One Monument Square
Portland, ME  04101-4033
(207) 791-1100

### Plaintiffs' Executive Committee

**Chair**
Joseph J. Tabacco
Sharon T. Maier
R. Scott Palmer
Law Firm of Berman, DeValerio, Pease, Tabacco, Burt & Pucillo
425 California Street, Suite 2100
San Francisco, CA  94104
(415) 433-3200

**Vice-Chair**
Michael M. Buchman
Law Firm of Milberg, Weiss, Bershad, Hynes & Lerach, LLP
One Pennsylvania Plaza, 49th floor
New York, NY  10119-0165
(212) 594-5300

**Additional Executive Committee Members**

Bernard Persky
Hollis L. Salzman
Chris McDonald
Goodkind Labaton, Rudoff & Sucharow, LLP
100 Park Avenue, 12th floor
New York, NY  10017
(212) 907-0700

Robert J. LaRocca
William E. Hoese
Kohn, Swift & Graf, PC
One South Broad Street, Suite 2100
Philadelphia, PA  19107
(215) 238-1700

Patrick E. Cafferty
Jennifer Winter Sprengel
Miller, Faucher & Cafferty, LLP
30 North LaSalle Street, Suite 3200
Chicago, IL  60602
(312) 782-4880

H. Adam Prussin
Don Davis
Pomerantz, Haudek, Block, Grossman & Gross, LLP
100 Park Avenue, 26th floor
New York, NY 10017
(212) 661-1100

Samuel D.  Heins
Alan I. Gilbert
Heins, Mills & Olsen, PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 338-4605

Stephen Lowey
Peter St. Phillip
Lowey, Dannenberg, Bemporad & Selinger, PC
The Gateway
One North Lexington Avenue
White Plains, NY  10601
(914) 997-0500

Robert S. Frank
Harvey & Frank
P.O. Box 126
Portland, ME  04112
(207) 775-1300

**Defendants' Counsel**

Margaret M. Zwisler
William R. Sherman
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue N.W.
Washington, D.C.  20004
(202) 783-0800

Richard C. Godfrey
David J. Zott
Brett A. Bakke
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Michael R. Lazerwitz
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue N.W.
Suite 9000
Washington, D.C.  20004
(202) 974-1500

Robert A. Van Nest
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Peter Sullivan
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Daniel L. Goldberg
Daniel S. Savrin
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Glenn A. Mitchell
Stein Mitchell & Mezines
1100 Connecticut Avenue
Suite 1100
Washington, D.C.  20036
(202) 737-7777