# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

IN RE NEW MOTOR VEHICLES  ]
  CANADIAN EXPORT ANTITRUST ]  MDL DOCKET No. 1532
  LITIGATION     ]

## ORDER ON MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

On this motion for class certification, I certify a 23(b)(2) class of automobile buyers/lessees who seek injunctive relief against motor vehicle manufacturers, distributors and dealer associations. The 23(b)(2) class asserts that the manufacturers, distributors and dealer associations are conspiring, in violation of federal antitrust law, to prevent new Canadian cars from being imported into the United States.[1]

### BACKGROUND

The named plaintiffs (the "plaintiffs")[2] claim that the defendants'[3] conspiracy

---

[1] I will rule separately and somewhat later on the motion to certify six, distinct, statewide 23(b)(3) damage classes where the claim is that the challenged conduct has violated a particular state's antitrust and/or consumer protection statutes.

[2] According to the Motion for Class Certification, there are eleven named plaintiffs from six states who seek certification of this nationwide class for injunctive relief pursuant to Rule 23(b)(2). Exemplar State Pls.' Mot. for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Pls.' Mot.") at 1 n.1 (Docket Item 262). All of these named plaintiffs bought and/or leased at least one new motor vehicle in the United States through one of the defendant automobile companies' authorized dealers during the period from January 1, 2001 to the present. Id. See also Fourth Am. Consolidated Class Action Compl. for Violations of the Sherman Antitrust Act ("Fourth Am. Compl.") ¶¶ 8, 10, 19, 22, 24, 27-28, & 31-32 (Docket Item 261).

[3] The defendant automobile companies in the United States and Canada are: General Motors Corporation; General Motors of Canada, Ltd.; Ford Motor Company; Ford Motor Company of Canada, Ltd.; Toyota Motor Sales, U.S.A., Inc.; American Honda Motor Company, Inc.; Honda Canada, Inc.; DaimlerChrysler Corporation; DaimlerChrysler Canada, Inc.; DaimlerChrysler Motors
*(continued next page)*

to stem the flow of motor vehicle imports from Canada to the United States has stifled a potential discount distribution channel of cheaper motor vehicles, resulting in less price competition in the U.S. market.[4]  They argue that, but for this conspiracy, the defendant automakers—who set the U.S. invoice prices and the nationwide suggested retail price for each particular model (Manufacturers Suggested Retail Prices or "MSRPs")[5]—would have lowered prices nationwide for most new vehicles sold in the United States.[6]  The plaintiffs assert that this conspiracy began at least as early as 2001,[7] but may have started even earlier.[8]  They admit uncertainty about how long any antitrust injury has continued, recognizing that with a changing currency exchange rate (particularly in the years 2004-2005), "purchasers toward the end of the class period may not have been damaged by the ongoing conspiracy, because the opportunity for arbitrage . . .

---

Co., LLC; Mercedes-Benz USA, LLC; Mercedes-Benz Canada, Inc.; and Nissan North America, Inc. Fourth Am. Compl. ¶¶34-46. On February 24, 2006, the plaintiffs and defendant Toyota Motor Sales U.S.A., Inc. notified the court that they have entered into an agreement for settlement of the claims in this case.  See Notice of Settlement (Docket Item 336).  This settlement is still pending. One defendant, BMW of North America, was dismissed from the action on August 9, 2005.  See Stip. and Order Granting Mot. for Voluntary Dismissal of Def. BMW of North America, LLC (Docket Item 276).  In addition to the defendant automobile companies, the plaintiffs have sued two dealer associations: the National Automobile Dealers Association ("NADA," consisting of U.S. Dealers) and the Canadian Automobile Dealers Association ("CADA").  Fourth Am. Compl. ¶¶48-49.

[4] Fourth Am. Compl. ¶1.

[5] Fourth Am. Compl. ¶56;  Aff. of Robert E. Hall, Ph.D. re Pls.' Mot., Ex. A (Expert Report of Robert E. Hall, Ph.D.) ("Hall Report") ¶9 (Docket Item 272).

[6] See Hall Report ¶¶ 14-16, 47-59.

[7] Fourth Am. Compl. ¶1.  In 2001, the value of the Canadian dollar declined to historic lows that, but for the conspiracy, the plaintiffs say, would have provided third-party brokers with a greater incentive to buy vehicles and bring them into the United States to take advantage of an even greater price difference.  See Hall Report ¶35 & Ex. 3.

[8] See, e.g., Fourth Am. Compl. ¶61 ("Beginning in approximately the 1990s, the [defendants] created and shared 'blacklists' of persons and entities known to export new vehicles from Canada to the United States for resale").

(temporarily) disappeared."[9]

The defendants deny that there was any conspiracy among them.  They say that there were only legal vertical agreements between an individual manufacturer and its dealers.[10]  The defendants also dispute the plaintiffs' theory of causation, asserting that any conspiracy would not have affected the nationwide invoice price or MSRPs because the export threat from Canada was small, geographically isolated, and model-specific.[11]  The automobile companies, they say, would have responded to any "grey market" with targeted regional incentives, not nationwide reductions in net dealer invoice prices and MRSPs.[12]

I have previously ruled on a number of defense motions to dismiss.  As a result, there is no longer any federal antitrust damages claim.[13]  The federal

---

[9] Exemplar State Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. ("Pls.' Reply") at 23 (Docket Item 323).  See also Defs. Opp. to Pls.' Mot. ("Defs.' Mem.") at 12, 48-49 (Docket Item 305).

[10] Defs.' Mem. at 5-7.

[11] See Defs.' Mem. at 10-11 (noting that the "grey market" export trade of used vehicles at issue is "inherently transitory[,] ris[ing] and fall[ing] with arbitrary exchange rate fluctuations[, and] is limited to certain geographic areas and certain car models," and therefore has a "spotty" impact on new car sales); see also, e.g., id. at 10-15; id., App. Vol. I, Tab 1 (Aff. of Joseph P. Kalt, Ph.D. & Expert Report of Joseph P. Kalt, Ph.D.) ("Kalt Report") at 5-7.  The defendants also assert that "nearly all of the named class representatives" revealed in their depositions that they would not have purchased a grey market vehicle.  Defs.' Mem. at 14.  But the plaintiffs' argument is that the presence of such vehicles in the market would have lowered the price of new U.S. motor vehicles (which the plaintiffs did lease or buy).  The plaintiffs do not claim that the class members would have bought a grey market car.

[12] See, e.g., Kalt Report at 6.  The defendants also argue that certain states' emissions requirements and other states' requirement that new vehicles be sold only by franchised dealers prevented importing Canadian grey market vehicles, or at least certain models, into those states.  See Defs.' Mem. at 15-16.  This argument may limit any damages recovery in a particular state if ultimately I certify a (b)(3) class for that state.  The defendants have not, however, used this as an argument for narrowing the scope of the (b)(2) class.

[13] I dismissed the federal damages claim on the basis of Illinois Brick Co. v. Illinois, 431 U.S. 720, 730-31 (1977).  In re New Motor Vehicles Canadian Exp. Antitrust Litig., 307 F. Supp. 2d 136, 142-44 (D. Me. 2004).  The plaintiffs have reasserted that claim in their Fourth Amended Complaint only to preserve their appellate rights on my ruling.  See Fourth Am. Compl. ¶101.

injunctive relief claim for an antitrust violation survives.[14]  The plaintiffs seek

certification of a Rule 23(b)(2) injunctive class of all people[15] who:

> purchased or leased or intend to purchase or lease a new
> motor vehicle manufactured by a Defendant from a United
> States dealer during the period from January 1, 2001 to the
> present.[16]

They seek affirmative injunctive relief that would:

(i)     require the defendants to honor warranties in the
        United States on all new motor vehicles sold in
        Canada;

(ii)    enjoin the defendants from blacklisting Canadian
        exporters and individuals suspected of exporting new
        motor vehicles;

(iii)   enjoin the defendants from exchanging certain
        information with competitors, *i.e.* blacklists, "best
        practices" to avoid export sales and VIN data transfer;

(iv)    enjoin chargebacks to Canadian dealers for export
        sales;

(v)     enjoin the tracking of Canadian new vehicle VINs for
        the purposes of affecting exports;

(vi)    enjoin U.S. manufacturers from penalizing U.S. dealers
        for buying or selling Canadian Export Vehicles;

(vii)   enjoin CADA and NADA from encouraging or
        suggesting that their member-dealers not buy or sell
        Canadian exports or act to prevent Canadian exports;
        and

(viii)  enjoin the defendants from withholding safety recall
        information from Registered Importers and/or United
        States consumers based on a vehicle's status as an
        export from Canada.[17]

## ANALYSIS

The First Circuit requires "a rigorous analysis of the prerequisites

---

[14] I also dismissed a large number of state statutory claims.  I eliminated the state common law claim for restitution as a separate substantive claim, but retained it as a potential measure of recovery if the plaintiffs recover on their state statutory claims.  I permitted a number of state antitrust and consumer protection damage claims to survive.

[15] Excluding governmental entities, this Court, the defendants, their corporate parents, subsidiaries, affiliates, and their co-conspirators.

[16] Pls.' Mot. at 1-2.

established by Rule 23 before certifying a class." <u>Smilow v. Southwestern Bell Mobile Sys.</u>, 323 F.3d 32, 38 (1st Cir. 2003).  "To obtain class certification, the plaintiff[s] must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." <u>Id.</u> (citing <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997)).

Therefore, I examine first whether the plaintiffs have met their burden of proving each of Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy.[18]  Then I turn to the additional, and distinct, requirements for the proposed 23(b)(2) federal injunctive class.  I am "entitled to look beyond the pleadings" in order to make an informed certification decision.  <u>In re Polymedica Corp. Sec. Litig.</u>, 432 F.3d 1, 6 (1st Cir. 2005).

### (A)  Rule 23(a) Threshold Requirements

#### (1)  Numerosity

"The most obvious consideration [in assessing numerosity] is the size of the class itself."  7A Charles Alan Wright et al., <u>Federal Practice and Procedure: Civil 3d</u> § 1762 (3d ed. 2005).  There is no dispute that the members of the proposed 23(b)(2) class here are "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1). Given the large number of cars sold in the United States

---

[17] <u>See</u> Exemplar State Pls.' Mem. of Law in Supp. of Pls.' Mot. ("Pls.' Mem.") at 2-3 n.3, 17 n.33 (Docket Item 263) (providing an overview of the relief requested).

[18] Rule 23(a) lays out four prerequisites applicable to all class actions:  "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect *(continued next page)*

each year, it is reasonable to infer that the proposed federal injunctive class

numbers in the millions.[19]  Since I "may draw reasonable inferences from the facts

presented to find the requisite numerosity," McCuin v. Sec'y of Health & Human

Servs., 817 F.2d 161, 167 (1st Cir. 1987), and since there is no dispute, I

conclude that the numerosity requirement is satisfied.

### (2) Commonality

There also is no dispute that there are "questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2).[20]  Two issues plainly common to the class are

whether some or all of the defendants in fact agreed to restrict Canadian car

imports so as to protect United States prices and, if they did, whether such an

agreement was unlawful under federal antitrust law.  "[A]llegations concerning the

existence, scope, and efficacy of an alleged conspiracy present questions

adequately common to class members to satisfy the commonality requirement."  6

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:5 (4th ed. 2002).

See also, e.g., id. ("The antitrust plaintiff can normally satisfy this [commonality]

requirement in the complaint."); In re Rubber Chems. Antitrust Litig., 232 F.R.D.

346, 351 (N.D. Cal. 2005) ("Courts consistently have held that the very nature of a

conspiracy antitrust action compels a finding that common questions of law and

_____

the interests of the class." Fed. R. Civ. P. 23(a).

[19] The defendants themselves say that "the proposed class [for injunctive relief] includes more than
a hundred million American consumers … who purchased or leased or intend to purchase or lease
a new mother vehicle manufactured by a Defendant."  Defs.' Mem. at 2-3 (internal citation
omitted).

[20] Nothing in the language of the Rule suggests that *every* question need be common for this
requirement to be satisfied.  See In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005)
("The rule does not require that all issues of fact and law be common[.]  The threshold of
commonality is not a difficult one to meet.")  (internal citations omitted).

fact exist.") (quoting In re Sugar Indus., 1976 WL 1374, at *13 (N.D. Cal. May 21, 1976)).

### (3)  *Typicality*

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The language of 23(a)(3) does not mandate that the claims of the class representative be *identical* to those of class members.   Instead, the typicality "requirement is satisfied 'if the representative plaintiff[s'] claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members.'" In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 204-05 (D. Me. 2003) (quoting In re Playmobil Antitrust Litig., 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998)).  A class representative needs to "possess the same interest and suffer the same injury shared by all members of the class he represents." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974).  The focus in the typicality inquiry is on "whether the named plaintiff[s'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982).[21]  Plaintiffs are not "typical" if they are "subject to unique defenses that would divert attention from the common claims of the class." In re Bank of Boston Corp. Sec. Litig., 762 F.

---

[21] The central concern of typicality is connected to Rule 23(a)(4)'s requirement that class representatives "fairly and adequately protect the interests of the class," a requirement I discuss in more detail below.  See Amchem Prods., 521 U.S. at 626 n.20 ("The adequacy-of-representation *(continued next page)*

Supp. 1525, 1532 (D. Mass. 1991).

The defendants argue that the typicality standard is unsatisfied here because not all class members have suffered the same injury, some class members have suffered no injury at all, and at least two named plaintiffs allegedly paid lower prices because of the import restriction.[22]  The defendants maintain that named plaintiffs who did not pay an overcharge do not even have standing to pursue a claim.[23]  I address the standing argument first.

"[T]hreshold individual standing is a prerequisite for all actions, including class actions", and class representatives must meet this standing requirement.  1 Conte & Newberg, supra, § 2:5.  But standing for an antitrust *injunctive* claim is different from standing for an antitrust *damages* claim.  Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 110-11 (1986) (identifying and analyzing differences).  Injunctive antitrust standing requires that the plaintiff demonstrate only "threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.  See Cargill, 479 U.S. at 111; Hawaii v. Standard Oil. Co., 405 U.S. 251, 260-61 (1972).  As the First Circuit has noted, "[p]lainly, Congress empowered a broader range of plaintiffs to bring § 16 [15 U.S.C. § 26 injunction] actions

---

requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a).") (citation omitted).

[22] Defs.' Mem. at 48.

[23] Id.  In making this argument, the defendants contend that the import restrictions worked both ways, *i.e.,* American vehicle exports to Canada were also curtailed.  Thus, they hypothesize, during times when the value of the Canadian dollar strengthened, Canadian cars were more expensive than their American counterparts, and therefore the two named plaintiffs buying cars in the United States during this time were in essence protected from the market effect of more expensive Canadian prices by the two-way import restriction.  When posed this scenario as a hypothetical at his deposition, the plaintiffs' expert agreed that a restriction on American imports to Canada *(continued next page)*

8

because the standards to be met are less exacting than those under § 4; under § 16, a plaintiff need show only a threat of injury rather than an accrued injury." Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 407-08 (1st Cir. 1985).

A plaintiff needs to "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Mid-West Paper Prods. Co. v. Continental Group, Inc., 596 F.2d 573, 591 (3d Cir. 1979) (internal quotation marks and citation omitted). Therefore, to show injunctive antitrust standing a plaintiff need not have suffered actual injury in the past; the *threat* of loss or damage is enough. Of course, like a damages claim under 15 U.S.C. § 15, "the threatened loss or damage" must be "of the type the antitrust laws were designed to prevent and that flows from that which makes the defendants' acts unlawful." Cargill, 479 U.S. at 113 (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)). Higher prices for consumers resulting from antitrust violations are antitrust injuries. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 400-01 (3d Cir. 2000) (drug manufacturer's efforts to deny consumers access to cheaper versions of product is antitrust injury that proximately causes threatened loss or injury); Campos v. Ticketmaster Corp., 140 F.3d 1166, 1172 (8th Cir. 1998) (monopolist defendant's imposition of additional fees is sufficient to establish injunctive relief standing for consumers who paid them); see also SAS of Puerto Rico, Inc. v. Puerto Rico Tel.

_____

during such a time could keep prices lower for American consumers. See id., App. Vol. V, Tab 31 *(continued next page)*

9

Co., 48 F.3d 39, 44 (1st Cir. 1995) (consumer in threatened market is a "presumptively 'proper' [antitrust] plaintiff") (citing Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538-39 (1983)).

Here, the named plaintiffs assert that they purchased or leased cars (or that they intend to do so) in the context of an ongoing conspiracy by the defendants to keep Canadian cars from increasing price competition in the United States market.[24]  Whether a particular plaintiff was such a good bargainer that in the past he/she obtained a price that would not be lowered by more competition, or whether exchange rates during some periods temporarily made Canadian cars more expensive and therefore not price-competitive, does not affect the standing of these plaintiffs to seek an injunction against continuation of such of a conspiracy.  They confront or confronted a threatened loss or damage resulting from restrictions on competition, precisely of the type the antitrust laws were designed to prevent.  There is no indication that exchange-related arbitrage opportunities have permanently ended.

Turning from standing to typicality, I conclude that the claims of the named plaintiffs are also typical.  These plaintiffs claim that an unlawful conspiracy has existed and continues to exist, and that it affects price competition.  They want to

_____

(Dep. of Robert E. Hall (excerpts)) ("Hall Dep.") at 242-45, 248-49.

[24] The complaint does not state explicitly that any one of the named plaintiffs intends to purchase a motor vehicle in the future.  Rather, it asserts more generally that "[b]ecause Defendants' combination and conspiracy is ongoing, Plaintiffs and members of the Class are threatened with similar injury in the future."  Fourth Am. Compl. ¶81.  Given that the defendants have not challenged this aspect of the plaintiffs' complaint, I read it liberally to infer the direct assertion.

bring it to a halt by injunctive relief. Such claims are typical of the class. Individuals seeking injunctive standing need not have *sustained* the actual injury; that is, they need not have actually paid a higher price themselves. Instead, as <u>Cargill</u>, <u>Standard Oil</u>, and <u>Cia. Petrolera</u> teach, this anti-competitive injury must be "threatened" by the defendants' antitrust violation. Under the plaintiffs' antitrust theory the threat of reduced price competition continues for the class.[25] Therefore, the named plaintiffs for the (b)(2) federal injunctive class meet the typicality standard.

### *(4)  Adequacy*

The final requirement under Rule 23(a)(4) is that "the representative parties …fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prods.</u>, 521 U.S. at 625. The First Circuit has emphasized the importance of this final threshold requirement:

> One of the most important of these requirements is that the representative party fairly and adequately represent the interests of the class. Rule 23(a)(4). This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff.

<u>Key v. Gillette Co.</u>, 782 F.2d 5, 7 (1st Cir. 1986).

The defendants argue that the named plaintiffs here are not adequate class representatives because "there are inherent conflicts that go to the heart of the

---

[25] In my Order of March 4, 2004 denying the defendants' Motion to Dismiss as to the injunctive claims, I held that "the Amended Complaint . . . allege[s] that 'violations are continuous and will *(continued next page)*

case."[26]  These alleged conflicts are:

1.    several named plaintiffs were not injured because they purchased
      or leased 2004 or 2005 model year vehicles when exchange rates
      made Canadian car prices higher than American;[27]

2.    some purchasers benefited from the alleged antitrust conspiracy
      (an economic argument based upon "re-equilibration");

3.    those purchasers who traded in a vehicle gained from the higher
      prices (*i.e.*, higher trade-in value); and

4.    the conspiracy promotes dealer investment and interbrand
      competition and therefore is good for purchasers who value
      dealership services.

In the context of an injunctive class, these four arguments[28] can be treated

as one: that the class representatives are not adequate because some purchasers

in the past were not harmed by, or may have benefited from, the defendants'

alleged antitrust conspiracy.  I conclude that the named plaintiffs nevertheless will

fairly and adequately represent the interests of the absent class members.  The

issues for this (b)(2) class are whether the defendants conspired to violate the

federal antitrust laws, and whether any violation creates a "threatened loss or

damage" under 15 U.S.C. § 26, such as to warrant an injunction.  Whether a

_____

continue unless enjoined by this Court', which constitutes "irreparable injury" remediable by an
injunction.  In re New Motor Vehicles, 307 F. Supp.2d at 144 n.10.

[26] Defs.' Mem. at 49.

[27] This argument of no past injury may be a more significant issue for the 23(b)(3) state law
damages class certifications.  However, the defendants do *not* argue that these named
representatives will never lease or buy (or do not intend to lease or buy) vehicles in the future, or
that an American-Canadian exchange rate reversal has permanently cured the problem.  Therefore,
these named representatives are not disqualified from representing this injunctive class.

[28] See Defs.' Mem. at 49-50.  The defendants refer to the "vertical restrictions." The plaintiffs have
not challenged independent vertical restrictions, but a horizontal agreement that enhanced and
strengthened the vertical restrictions.  It is the horizontal agreement that is allegedly illegal.
Presumably the defendants will argue on the merits that the conduct here is not per se illegal, but
*(continued next page)*

12

particular plaintiff turns out to have benefited in the past from the allegedly illegal conduct does not determine whether he or she confronts "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Mid-West Paper Prod. Co., 596 F.2d at 591. The class representatives are adequate, and no conflict exists, because all potential class members are subjected to future "threatened loss or damage."[29]

The defendants also argue that the named plaintiffs are not adequate class representatives because they do not sufficiently understand the core allegations of the complaint and have little understanding of their duties as class representatives.[30] Plainly, "[a]n antitrust litigant is not expected to appreciate the finer points of the Sherman Act, Clayton Act, or the Federal Rules of Civil Procedure governing class action certification." In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1037 (N.D. Miss. 1993); see also In re Playmobil, 35 F. Supp.2d at 242 ("Courts do not require the representative plaintiff to be the best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual basis on which a class action can be maintained."). Excerpted portions of the named plaintiffs' depositions provided

---

subject to a rule of reason approach (they said so at oral argument), and will seek to justify any horizontal agreement on that basis.

[29] Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003), cited by the defendants, does not compel a different result.  The antitrust class certified in that case was a 23(b)(3) damages class, not a 23(b)(2) injunctive class.  Id. at 1184.  A federal damages claim involves proof of actual economic injury.  See 15 U.S.C. § 15 ("injur[y] in [] business or property").  By contrast, as I have already noted, an injunctive claim involves proof of threatened injury.  See 15 U.S.C. § 26 ("threatened loss or damage").  The court's statement in Valley Drug that a "fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefited other members of the class," Valley Drug, 350 F.3d at 1189, applies to damage recovery.

by both parties[31] demonstrate sufficient knowledge of the case and full participation in discovery.[32]

I next determine whether this case fits within Rule 23(b)(2).

**(B)  Class Certification Under Rule 23(b)(2)**

To obtain certification under Rule 23(b)(2), the plaintiffs must demonstrate that the "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Paradigmatic Rule 23(b)(2) cases involve "various actions in the civil-rights field", but the subdivision is "not limited to [such] cases." Rule 23(b)(2) Advisory Committee Notes (1966 Rule Amendment). The Advisory Committee also recognized that antitrust cases may be appropriate for Rule 23(b)(2) certification, see id. (appropriate for action by purchasers against seller for illegal pricing scheme, or for class action involving illegal "tying" in violation of antitrust law).

Rule 23(b)(2) contains two requirements for certification. I address each individually.

---

[30] Defs.' Mem. at 50.

[31] See Defs.' Mem., Ex. B; Pls.' Reply, Ex. W.

[32] The defendants submitted deposition excerpts from all of the named plaintiffs except Jason and Cynthia Sengel. Defs.' Mem., Ex. B. The plaintiffs submitted deposition excerpts from all of the named plaintiffs except Cynthia Sengel and Arlene Berke. Pls. Reply, Ex. W. Given that all but one of the named plaintiffs (Cynthia Sengel) have deposition excerpts filed with the Court, I will accept the plaintiffs' assertions that "every plaintiff [has] fully participated in discovery," and "[a]ll named plaintiffs responded to defendants' document requests and made themselves available for depositions." Pls.' Reply at 26, 26 n.48.

### (1) "Acted . . . on grounds generally applicable to the class."

The plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class".  Fed. R. Civ. P. 23(b)(2).  See also Amchem Prods., 521 U.S. at 614.  The First Circuit has characterized this prong of the 23(b)(2) test as essential to class certification, for the "conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists," and a 23(b)(2) class "is defined by the actions which a defendant has taken toward the class, and which should arguably be enjoined."  Yaffe v. Powers, 454 F.2d 1362, 1366, 1367 (1st Cir. 1972).

This focus on the defendants' conduct means that "[a]ction or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  Rule 23(b)(2) Advisory Committee Notes (1966 Rule Amendment); see also 5 James Wm. Moore et al., Moore's Federal Practice § 23.43[2][a] (3d ed. 2004) ("A defendant's conduct . . . need not be directed specifically at each individual member of the class seeking certification.  Rather, the court will assess whether the defendant's behavior similarly affected all members of the prospective class.")

The defendants do not seem to dispute that the plaintiffs' allegations meet this requirement of Rule 23(b)(2).  Here, the plaintiffs allege that the defendants conspired "to eliminate the import of new vehicles from Canada into the United States," and that this "restrained trade and maintained the retail price of new motor vehicles sold in the United States . . . at artificially high levels," in violation

of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26.[33]   To promote this conspiracy, the plaintiffs say that the defendants required their American dealers not to honor warranties or install certain American automobile parts on new Canadian imports, and required their Canadian dealers to utilize "No Export" agreements and to conduct "due diligence" investigations.[34]   The plaintiffs also allege that the Automobile Companies penalized Canadian dealers that sold vehicles that were exported, threatened to withhold popular inventory from and terminate the dealerships of non-compliant Canadian dealerships, refused to provide owners with recall information, and tried to persuade parts suppliers not to provide parts that would convert Canadian vehicles to American standards.[35]   Finally, the plaintiffs allege that the dealer associations NADA and CADA "facilitated this conspiracy" by sponsoring information exchange meetings, promoting the development of industry-wide anti-export practices, and assisting the Automobile Companies' enforcement efforts.[36]   All these actions, the plaintiffs contend, violated federal antitrust law by limiting the export of cheaper Canadian cars into the United States, thus maintaining artificially high prices for American purchasers of new cars.[37]

   This case, therefore, satisfies the standard.  It is one where the defendants allegedly acted on grounds generally applicable to the class by limiting the export of cheaper vehicles from Canada to the United States, thereby maintaining, the

---

[33] Fourth Am. Compl. ¶¶ 91, 96.
[34] Id. ¶¶ 92-93.
[35] Id. ¶ 94.
[36] Id. ¶ 95.

plaintiffs say, artificially high prices for the class of American consumers.

> **(2)  "Thereby making appropriate final injunctive relief . . . with respect to the class as a whole."**

Rule 23(b)(2) next requires a court to examine the appropriateness of injunctive relief with respect to the class as a whole.  In this case, the statute makes an injunction available: under Section 16 of the Clayton Act, plaintiffs may receive injunctive relief "against threatened loss or damage by a violation of the antitrust laws", 15 U.S.C. § 26.  The plaintiffs contend that the defendants' conduct is "continuing and will continue unless enjoined."[38]  If the plaintiffs succeed in proving that the defendants' conduct violates the antitrust laws, and that the violation threatened or threatens loss or damage and is likely to continue, then injunctive relief is appropriate, and appropriate to the class as a whole.  See generally Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 635 (1977) (the injunctive relief authorized by § 16 "undoubtedly embodies congressional policy favoring private enforcement of the antitrust laws, and undoubtedly there exists a strong national interest in antitrust enforcement").

The defendants have raised three arguments that I interpret to be directed at this prong of the Rule 23(b)(2) requirements; I address each in turn.

> **(a)  Predominance of Money Damages**

The defendants argue that the 23(b)(2) class here may not be certified because it involves primarily money damages, rather than injunctive relief.[39]  The

---

[37] Id. ¶ 96; see also Pls.' Mem. at 17-18.
[38] Fourth Am. Compl. ¶ 97.
[39] Defs.' Mem. at 44-45.

Advisory Committee Notes for Rule 23 state that subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966 Rule Amendment). However, the plaintiffs' federal damages claim under Section 4 of the Clayton Act, 15 U.S.C. § 15, has been dismissed. In re New Motor Vehicle Canadian Exp. Antitrust Litig., 307 F. Supp.2d 136, 137 (D. Me. 2004). Thus, the federal antitrust claim is no longer one where the relief "relates exclusively or predominantly to money damages." As Judge Easterbrook of the Seventh Circuit has recognized, certification of separate classes for the injunctive aspects and the damages aspects of a lawsuit (such as is requested here) can ensure that money damages do not predominate over injunctive relief in a Rule 23(b)(2) class, for it "achiev[es] both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects." Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 898 (7th Cir. 1999).

If that were not enough (and I believe that it is), state law damage claims also have been dismissed for all but 23 states and the District of Columbia. In re New Motor Vehicle Canadian Export Antitrust Litig., 350 F. Supp.2d 160, 168 (D. Me. 2004). Therefore, not only does no member of the class have a federal damage claim, but members of the proposed 23(b)(2) class who reside in the other 27 states have absolutely no claim for money damages, whether federal or state. For these proposed class members, it is impossible to argue that the "appropriate final

relief relates exclusively or predominantly to money damages."[40]

### (b)  *The Necessity of a Class Action*

The defendants argue that certification of an injunctive class is unnecessary here because "any single plaintiff could seek the identical relief as the purported class."[41]

Contrary to the defendants' argument, the Supreme Court has held that a Rule 23(b)(2) class may be certified even if there is no absolute need for a class action.  <u>Califano v. Yamasaki</u>, 442 U.S. 682, 699-700 (1979).  The First Circuit likewise has expressly rejected a strict rule of necessity for Rule 23(b)(2) classes: "we do not accept the concept of a strict 'necessity requirement' under Rule 23(b)(2)."  <u>Dionne v. Bouley</u>, 757 F.2d 1344, 1356 (1st Cir. 1985).  Although stating that a district court may consider whether the same relief could be afforded without certification, the First Circuit held that the proper test remains anchored in the language of the Rule: "[t]he language of Rule 23(b)(2) is reasonably clear: whether the action should be maintained as a class action depends on the *appropriateness* of injunctive or corresponding declaratory relief with respect to the class as a whole."  <u>Id</u>. (emphasis in original); <u>see also</u> <u>Yaffe</u>, 454 F.2d at 1367

---

[40] The case cited by the defendants to support their argument, <u>Christiana Mortg. Corp. v. Delaware Mortg. Bankers Ass'n</u>, 136 F.R.D. 372, 376 (D. Del. 1991), is inapposite. There the plaintiffs were suing for "compensatory damages, treble damages, and punitive damages" under three federal antitrust claims. Here, I have dismissed all federal damages claims.  Therefore, the statement that "it is generally inappropriate in an antitrust suit seeking treble damages to certify a class under Rule 23(b)(2)," <u>id</u>. at 382, has no bearing.  In addition, the plaintiffs' interest in injunctive relief in <u>Christiana Mortgage Corp</u>. was problematic. They did not allege that the defendants' acts were continuing: in fact, they could not, for the underlying violation stemmed from a one-time-only circulation of materials calling for a boycott of the plaintiffs.  <u>Id</u>.  In this case, the plaintiffs do allege that the defendants' conduct is continuing.  Fourth Am. Compl. ¶ 97.

("[T]he availability of other methods of resolution which might be superior to a class action are not criteria of a subdivision (b)(2) class, but . . . of a (b)(3) class[.]").   Rejection of a rule of necessity makes sense, "because a need requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee." 2 Conte & Newberg, supra, § 4:19.[42]

### (c) The "Cohesiveness" of the Class

The defendants argue that the proposed class is not "cohesive."[43]  They contend that there are "multiple categories of plaintiffs that would be demonstrably worse off" if the defendants were enjoined from the alleged conduct; these potential class members allegedly benefited from the defendants' export restrictions.[44]

A requirement of "cohesiveness" is generally associated more with Rule 23(b)(3) classes than with (b)(2) classes.  The cohesiveness requirement stems from the Supreme Court's statement in Amchem Products, Inc. v. Windsor: "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   521 U.S. at 623.  The

---

[41] Defs.' Mem at 47.  I construe this argument as a challenge to Rule 23(b)(2)'s requirement that "final injunctive relief . . . for the class as a whole" be appropriate.

[42] See also Michael J. Murphy & Edwin J. Butterfoss, Note, The "Need Requirement": A Barrier to Class Actions Under Rule 23(b)(2), 67 Geo. L.J. 1211, 1228 (1978-1979) (arguing that need requirement "is not supported by the language or the intent" of Rule 23(b)(2), and that such a requirement poses several problems, both pre- and post-judgment); Daniel Tenny, Note, There is Always a Need: The "Necessity Doctrine" and Class Certification Against Government Agencies, 103 Mich. L.R. 1018, 1028 (2005) (arguing that district courts are not well positioned to determine whether injunctive relief afforded to one plaintiff will inure to the future benefit of all similarly situated individuals, and that therefore the necessity doctrine should not be used by district courts to deny class certification).

majority of federal appellate decisions addressing "cohesiveness" tie the concept to 23(b)(3), not 23(b)(2), classes, citing Amchem Products, Inc.  See, e.g., In re Cmty. Bank of N. Virginia, 418 F.3d 277, 308-09 (3d Cir. 2005); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001); Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 147 (4th Cir. 2001).[45]

The defendants rely for their 23(b)(2) cohesiveness requirement upon cases such as Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998) and Barnes v. American Tobacco Co, 161 F.3d 127 (3d Cir. 1998).  In Allison the Fifth Circuit recognized that "because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." Allison, 151 F.3d at 413.  For that reason, according to Allison, the underlying premise of a (b)(2) class is "that its members suffer from a common injury properly addressed by class-wide relief." Id.  The Fifth Circuit said that this "presumption of cohesiveness" breaks down when individualized remedies predominate (such as those associated with money damages claims). Id.; see also In re Monumental Life Ins. Co., 365 F.3d 408, 415-16 (5th Cir. 2004) (following Allison); McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 553 (5th Cir. 2003)

---

[43] Defs.' Mem. at 46 (citing Barnes v. American Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998)).
[44] Defs.' Mem. at 46.
[45] In two very recent opinions the First Circuit linked "cohesiveness" to the Rule 23(b)(3) predominance requirement.  See In re PolyMedica Corp., 432 F.3d at 3 n.5 ("[The Rule 23(b)(3) predominance] requirement, although reminiscent of the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citing Unger v. Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005)) (internal quotation marks omitted); In re Xcelera.com Sec. Litig., 430 F.3d 503, 506 n.5 (1st Cir. 2005) (same) (citing Polymedica).

(same).

The Third Circuit, in <u>Barnes v. American Tobacco Co.</u>, also referred to the cohesiveness of a (b)(2) class: "it is well established that the [(b)(2)] class claims must be cohesive," and indeed, "a (b)(2) class may require more cohesiveness than a (b)(3) class." 161 F.3d at 142-43.  <u>Barnes</u> is a case where the district court first denied class action status under both (b)(2) and (b)(3) and called the (b)(2) claim (injunctive relief of medical monitoring in a cigarette smoking case) "merely a thinly disguised claim for future damages", <u>id</u>. at 131. However, the court did suggest that a claim limited solely to medical monitoring might qualify for (b)(2) certification.  The plaintiffs then proceeded to dismiss all their claims except for medical monitoring, seeking as their only relief "a court-supervised fund that would pay for medical examinations designed to detect latent diseases caused by smoking", <u>id</u>. at 132. Although at first the district court certified this (b)(2) class, it later decertified it. The Third Circuit affirmed the decertification, finding that "addiction, causation, the defenses of comparative and contributory negligence, the need for medical monitoring and the statute of limitations present too many individual issues" and therefore defeat cohesiveness.  <u>Id</u>. at 143. The Eighth Circuit followed <u>Barnes</u> in <u>In re St. Jude Medical, Inc.</u>, 425 F.3d 1116 (8th Cir. 2005), observing that "medical monitoring classes suffer from cohesion difficulties" and that certification of a number of such classes had been denied.  <u>Id</u>. at 1122.[46]

---

[46] In <u>In re MTBE Products Liability Litigation</u>, 209 F.R.D. 323 (S.D.N.Y. 2002), cited by the defendants at oral argument, the district court reached a similar conclusion where the requested "injunctive" relief related to clean-up of individual wells exposed to a chemical contaminant, situated in numerous states nationwide, presenting individualized issues such as varying *(continued next page)*

What Allison, Barnes, and St. Jude Medical teach is that when a class of individuals alleges a group harm, and seeks a broad, class-wide, injunctive remedy, there is an "underlying premise" of cohesiveness that makes (b)(2) certification appropriate.  But when that injunctive remedy must be individualized (as is the case with money damages, or with court-ordered medical monitoring), the cohesiveness is lost, and (b)(2) certification becomes inappropriate.

These principles do not call for denial of class certification here.  The differences are obvious. The plaintiffs in Allison sought money damages.  The so-called injunctive relief in Barnes and St. Jude Medical was actually money that would have to be paid for future medical procedures specific to individual members of the class.  Qualification for these benefits would raise all the issues the courts noted.  Here, the requested injunctive relief does not involve money. Nor does the requested injunctive relief vary according to the characteristics of, or the effect of, the defendants' conduct on individual members of the class.  Instead, the Fourth Amended Complaint makes clear that the requested relief is a general injunction barring the defendants from conduct found to be in violation of the antitrust laws.[47]  That relief does not vary according to the individual; instead, it is a broad-based, class-wide, group remedy.  Therefore, if there is a cohesiveness requirement for a (b)(2) class, it is met here.

In fact, this case is more like Griffin v. Burns, 570 F.2d 1065 (1st Cir.

_____

sensitivities to taste and odor, varying levels of contamination, varying sources of contamination, and differing effects on well-owners.

[47] Fourth Am. Compl. at 29.  I provide a synopsis of the requested relief in this Order's Background Section, supra.

1978).  There, the First Circuit affirmed certification of a class of voters who had their votes invalidated because of how they voted (*i.e.* via absentee or "shut-in" votes). In doing so, the court refused to disqualify the class merely because some members were happy with the election outcome.  Id. at 1073.  Instead, the court focused squarely on the direct result of the defendants' conduct: "every member of the plaintiff class had his vote quashed simply because it was cast by absentee or shut-in ballot.  The injunctive relief referred to in the rule does not require that the district court look into the particular circumstances of each member of the class."  Id. at 1074. (citing 3B Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d ¶ 23.40 (1977)) (internal quotation marks and brackets removed).  Thus, it did not matter that some of the class members were not "aggrieved" at the ultimate election outcome because their candidate still had been elected; "having suffered the loss of their ballots, [they] shared with the other class members the legal injury complained of here."  Id. at 1073.

Griffin's reasoning is consistent with the thrust of Rule 23(b)(2).  See also 7AA Wright et al., supra, § 1775 ("All the class members need not be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).  What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class.").  As the First Circuit observed, "[a]ctions under Rule 23(b)(2) may be more rough-hewn than those in which the court is asked to award damages [under Rule 23(b)(3)]." Griffin, 570 F.2d at 1074.

Thus, even if I accept the defendants' contention that there are potential

24

class members who were not harmed or who actually benefited from the export restrictions, I find that this fact, just as in the case of the voters whose ballots were invalidated improperly but whose candidate was elected in <u>Griffin</u>, does not destroy the cohesiveness of the (b)(2) class.

## CONCLUSION

I conclude that the named plaintiffs have satisfied all the requirements of 23(a) and (b)(2).  I therefore **CERTIFY** the proposed injunctive class pursuant to Rule 23(b)(2). The plaintiffs have demonstrated that the "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

SO ORDERED.

DATED THIS 10TH DAY OF MARCH, 2006

/S/D. BROCK HORNBY
D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CIVIL DOCKET FOR CASE #: 2:03-MD-1532-DBH**

Liaison Counsel

**For Plaintiffs**
Robert S. Frank
Harvey & Frank
P.O. Box 126
Portland, ME  04112
(207) 775-1300

**For Defendants**
William J. Kayatta, Jr.
Pierce Atwood
One Monument Square
Portland, ME  04101-4033
(207) 791-1100

Plaintiffs' Executive Committee

**Chair**
Joseph J. Tabacco
Sharon T. Maier
R. Scott Palmer
Law Firm of Berman, DeValerio, Pease, Tabacco, Burt & Pucillo
425 California Street, Suite 2100
San Francisco, CA  94104
(415) 433-3200

**Vice-Chair**
Michael M. Buchman
Law Firm of Milberg, Weiss, Bershad, Hynes & Lerach, LLP
One Pennsylvania Plaza, 49th floor
New York, NY  10119-0165
(212) 594-5300

**Additional Executive Committee Members**

Bernard Persky
Hollis L. Salzman
Chris McDonald
Goodkind Labaton, Rudoff & Sucharow, LLP
100 Park Avenue, 12th floor
New York, NY  10017
(212) 907-0700

Robert J. LaRocca
William E. Hoese
Kohn, Swift & Graf, PC
One South Broad Street, Suite 2100
Philadelphia, PA  19107
(215) 238-1700

Patrick E. Cafferty
Jennifer Winter Sprengel
Miller, Faucher & Cafferty, LLP
30 North LaSalle Street, Suite 3200
Chicago, IL  60602
(312) 782-4880

H. Adam Prussin
Don Davis
Pomerantz, Haudek, Block, Grossman & Gross, LLP
100 Park Avenue, 26th floor
New York, NY 10017
(212) 661-1100

Samuel D.  Heins
Alan I. Gilbert
Heins, Mills & Olsen, PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 338-4605

Stephen Lowey
Peter St. Phillip
Lowey, Dannenberg, Bemporad & Selinger, PC
The Gateway
One North Lexington Avenue
White Plains, NY  10601
(914) 997-0500

Robert S. Frank
Harvey & Frank
P.O. Box 126
Portland, ME  04112
(207) 775-1300

**Defendants' Counsel**

Margaret M. Zwisler
William R. Sherman
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue N.W.
Washington, D.C.  20004
(202) 783-0800

Richard C. Godfrey
David J. Zott
Brett A. Bakke
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Michael R. Lazerwitz
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue N.W.
Suite 9000
Washington, D.C.  20004
(202) 974-1500

Robert A. Van Nest
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Peter Sullivan
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Daniel L. Goldberg
Daniel S. Savrin
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Glenn A. Mitchell
Stein Mitchell & Mezines
1100 Connecticut Avenue
Suite 1100
Washington, D.C.  20036
(202) 737-7777

Deborah A. Garza
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, NW
Suite 800
Washington, D.C. 20004

202-639-7000