# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

IN RE NEW MOTOR VEHICLES      ]
     CANADIAN EXPORT ANTITRUST      ]
     LITIGATION      ]          **MDL DOCKET NO. 1532**
     ]
     ]

## SUPPLEMENTAL ORDER ON CLASS CERTIFICATION
## OF STATE DAMAGE CLASSES

This case involves an alleged antitrust conspiracy to elevate or maintain U.S. car prices by preventing lower-priced Canadian cars from entering the American market. Remaining damage claims are based upon various state antitrust and consumer protection statutes. On May 12, 2006, I entered a preliminary order that approved certification of separate Rule 23(b)(3) damage classes of retail purchasers in each of five "exemplar" states. Order on Mot. for Class Cert.: Exemplar State Damage Classes ("May 12 Order") (Docket Item 361). Although the defendants had not challenged the plaintiffs' proposed ending date ("the present") for the class, I became concerned about the typicality of certain named plaintiffs' claims. I reserved judgment on the ending date for membership in the five classes and permitted further discovery and briefing. After oral argument on February 21, 2007, I now conclude that the class period should end April 30, 2003. Cross-border arbitrage opportunities may have waxed and waned before that date, but their scope is a proper subject for antitrust impact and

damage analysis when the record is complete.  I also address the remaining proposed statewide damage classes, and direct the preparation of a certification order.  Once it is entered, it will be final for appeal purposes under Fed. R. Civ. P. 23(f).

**Ending Date**

In my May 12 Order, I did not finally certify the five exemplar classes because under the typicality analysis I was uncertain that the named plaintiffs' claims were "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  The Supreme Court has said that if, at the time the class is certified it is clear that the named plaintiffs suffered no injury, they cannot represent the class.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982) (discussing East Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977)).[1]  Here, comments by the plaintiffs' lawyers led me to conclude that at least one named plaintiff in Kansas had purchased his vehicle at a time when exchange rates made Canadian car prices *higher* than American cars, contrary to the overall theory of the plaintiffs' case. From the exchange, I thought that my concern involved a narrow question of determining actual prices and exchange rates.[2]  As a result, I said in my May 12 Order:

---

[1] A different question is presented if that fact appears after certification.  Gen. Tel. Co., 457 U.S. at 156.

[2] Indeed, in rejecting then the defendants' challenge to the opening date of the class, I observed merely that the Fourth Amended Complaint "is broad enough to permit proof that the conspiracy had begun earlier [than January 1, 2001] and thus that impact could have started January 2001. *(continued next page)*

One final issue that comes up under typicality . . . raises concern about the ending date for the proposed classes: that particular named plaintiffs' claims (or the defenses to those claims) may not be typical of those of the class. As I have already noted, the plaintiffs virtually concede that their Kansas plaintiff bought a car at a time, 2005, when the exchange rates were such that Canadian cars were priced higher than American cars; since there was no arbitrage opportunity, the conspiracy could not have increased American prices. This concession calls into question the chronological scope of the damage class: when should the class end? The plaintiffs' reply memorandum suggests that this is a discovery problem; that some defendants used data in their response to the plaintiffs' certification motion that the plaintiffs had not seen previously; that the plaintiffs need to see comparable data for all the defendants; and that therefore I should not deny certification based on a merely "speculative conflict." Essentially, the plaintiffs ask me to certify the class now at its broadest and worry later about its proper scope and whether the named plaintiffs' claims are typical.

I do not believe that is the proper way to proceed. Instead, as to certification of the individual state damage classes, I defer decision until the pertinent discovery problems are resolved and I request Magistrate Judge Kravchuk to hold a prompt conference and set appropriate deadlines. Then I will determine the class definition (and whether the named plaintiffs are representative).

May 12 Order at 25-26 (footnotes omitted).

In retrospect, I believe that I should have confined my expression of concern to the appropriateness of the particular named Kansas plaintiff, rather than raise a question about the class ending date; after all, the antitrust conspiracy to restrict supply is allegedly ongoing. Instead, I have provoked a debate over when

_____

Whether that assertion can be proven will await summary judgment or trial." May 12 Order at 25 n.46 (citation omitted).

the arbitrage window of opportunity closed, or whether it was ever open, or how far open it needed to be, a far broader controversy than I expected and one that would require a complete determination of the plaintiffs' causation and damage case to resolve.[3]

Specifically, in response to my May 12 Order, the plaintiffs engaged their economic expert, Dr. Robert E. Hall of Stanford University and the Hoover Institution, to perform data analysis.  Dr. Hall assessed the profitability of purchasing new cars and light trucks in Canada and re-selling them in the United States.  Expert Rpt. of Prof. Robert E. Hall on the Timing of Profitability of Exporting New Vehicles from Canada to the U.S. ("Hall Arbitrage Rpt.") (Docket Item 425).  He examined various data and documents produced by the defendants, as well as some publicly available data and documents, id. ¶ 3, and information he obtained from importers, id. ¶ 35 n.32.  Dr. Hall concluded that for the time period in question, the percentage of Canadian vehicles (weighted by sales) that had price gaps larger than export costs (the arbitrage opportunity that the conspiracy allegedly sought to preempt) declined to less than 10% after

---

[3] Both sides urge upon me the make-or-break effect of a class certification ("an intense pressure is brought to bear upon the defendants with no judicial finding that any fact out there is so," Hr'g Tr. p. 66, Feb. 21, 2007 (defendants); "So, you know, there is a flip side to his argument too, and that's why the courts that have considered class certification tend to urge certification, tend to lean in favor of certification because without it—and indeed the public policy surrounding Rule 23 recognizes that . . . without the device as the first step, the plaintiffs will never really ever be able to get their day in court," Id. pp. 85-86 (plaintiffs)).  Certainly those generally recognized effects make me take very seriously the importance of the decision and reinforce my ordinary desire as *(continued next page)*

April 30, 2003.  Hall Arbitrage Rpt. ¶ 46.  As a result, the plaintiffs proposed that the class ending date be moved back from their original proposal ("the present") to April 30, 2003.  Pls.' Mot. & Mem. of L. for Class Cert. of the Non-Exemplar States ("Pls.' Mot.") at 47 (Docket Item 418).  The defendants, in turn, presented the analysis of their expert, Dr. Joseph P. Kalt of Harvard University's John F. Kennedy School of Government.  Expert Rpt. of Joseph P. Kalt ("Kalt Rpt.") (Docket Item 461, Ex. 3 part 1).  Dr. Kalt found fault with Dr. Hall's computations on a variety of grounds (*e.g.*, inadequate data and improper interpretation of data; improperly treating imported Canadian cars as "new"; failing to consider vertical unilateral restraints; choosing ten percent as the cutoff measure).  Kalt Rpt. at 4-5.  In response, the plaintiffs defended Dr. Hall's data and analysis and pointed out that without his ten percent calculation, the class period would end January, 2004.[4]  Pls.' Reply Mem. of L. Concerning Class Cert. ("Pls.' Reply Mem.") at 6 (Docket Item 475);  See also Hr'g Tr., Feb. 21, 2007, pp.15-16.  They advanced that date as an alternate closing point for the class.  Id.

_____

a trial judge to "get it right," but they cannot lead me in one direction or the other.  That would be an unprincipled rule of law.

[4] Hall's rebuttal report actually says that without the ten percent calculation, the period of export profitability would have ended in May 2004 (suggesting an alternate class ending date of April 30, 2004 rather than January 2004).  Rebuttal Expert Report of Prof. Robert E. Hall on the Timing of Profitability of Exporting New Vehicles from Canada to the United States ("Hall Rebuttal Rpt.") ¶ 12 (Docket Item 475).  Since the plaintiffs cite this paragraph of Hall's report as the basis for their January 2004 date, see Pls.' Reply Mem. at 6, I assume the January date is an error; but it is immaterial to my analysis because I accept the plaintiffs proposed ending date of April 30, 2003.

The defendants' primary unhappiness with Dr. Hall's analysis flows from their continuing insistence that I determine now whether the alleged horizontal conspiracy actually impacted American car prices. (They insist that it did not.) In my May 12 Order, I explained in detail why individual statewide damage classes are certifiable based upon various states' substantive law and why I would not make a final determination of the existence of antitrust impact at the certification stage. I see no need to reexamine that issue.[5] The only question I address now is narrow: the proper ending point for the various statewide damage classes. In response to my expression of concern, I was expecting only uncontroversial evidence of exchange rates and actual prices so as to exclude a time period when Canadian car prices were higher than American. I was not seeking a precise calculation of the actual arbitrage opportunity from month to month and model to model or a decision now of how many available imports (or the threat of them) it would take to make American prices move (the 10% controversy). Realistically, that will be possible only after all pricing and damage discovery and expert analysis are complete.[6] As I have said, I probably should have left the proposed

---

[5] Dr. Hall's analysis is persuasive that price differentials at some level inspire cross-border arbitrage opportunities. Whether an illegal agreement halting Canadian imports (or removing their threat) produced antitrust causation or retail purchase price impact remains to be proven at trial or demonstrated at summary judgment. The question for me at certification, however, is not who will win the merits of that argument, but whether the plaintiffs' proof, adequate or inadequate, meets the tests of commonality, impact and predominance. I concluded in my May 12 Order that it does. As I also observed then, this is not the time to determine what vertical restraints the individual manufacturers maintained, their legality and their effect.

[6] The commentators have said that the class definition should be precise, Manual for Complex
*(continued next page)*

ending date of the class untouched by my concern over the typicality of the named plaintiffs.  But now the plaintiffs have admitted that they cannot prove damages to a class after April 30, 2003.  I therefore end the class period at that date.  I do not resolve the experts' conflict over the adequacy of the pricing data (the defendants did not provide full discovery in time for Dr. Hall's calculations, as he repeatedly points out, although the plaintiffs' lawyers seem to say that what he had was sufficient), how it is interpreted (issues such as proper interpretation of data entry fields in the Powers Information Network forms, <u>see</u> footnote 8 <u>infra</u>), the volume of threatened imports required to provoke movement in American car prices, etc.  An ongoing illegal conspiracy to restrict supply justifies an open ending date for the class at this stage, narrowed only by the plaintiffs' admission.  The alternative would be a complete assessment of antitrust causation and damages now, requiring completion of fact and expert discovery. This would generate what <u>PolyMedica</u> warned against, an "unwieldy trial on the merits" of causation at the class certification stage.[7]  <u>In re PolyMedica Corp. Sec. Litig.</u>, 432

_____

Litigation (Fourth) § 21.222 (2004), and that is so, in order that people can determine whether they are class members.  <u>Id</u>.  But precise or not, the accuracy of the ending date cannot be confidently established at certification in a case where causation and impact may diminish as outside market forces (<i>e.g.</i>, exchange rates) fluctuate.

[7] <u>PolyMedica</u> held that "[t]he district court was entitled to look beyond the pleadings . . . in its resolution of the class-certification question."  <u>In re PolyMedica Corp. Sec. Litig.</u>, 432 F.3d 1, 19 (1st Cir. 2005).  <u>PolyMedica</u> based that holding upon the statement from <u>Tardiff</u> that "a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another," <u>Tardiff v. Knox County</u>, 365 F.3d 1, 4-5 (1st Cir. 2004); from <u>Smilow</u> that a "district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class," <u>Smilow v. Southwestern Bell Mobile Sys.</u>, 323 F.3d 32, 38 (1st Cir. 2003); <i>(continued next page)</i>

F.3d 1, 17 (1st Cir. 2005).  If, when we reach the stage of determining causation and damages, a class ending date of April 30, 2003, turns out to be too broad (or too narrow), the ending date can then be altered or amended.  See Fed. R. Civ. P. 23(c)(1)(C); May 12 Order at 23 ("the defendants may be able to prove that the arbitrage opportunities in certain years were so limited that there would be no antitrust impact from a horizontal company").  My May 12 concern (over whether certain named plaintiffs could represent the class if they had purchased during a time when the arbitrage opportunity reversed) has been satisfied by substituting plaintiffs who purchased at a different time.

_____

from Mowbray that "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case," In re Waste Mgmt. Holdings, Inc., v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000); and PolyMedica's preference for "the majority view" which it characterized as:  "a district court is not limited to the allegations raised in the complaint, and should instead make whatever legal and factual inquiries are necessary to an informed determination of the certification issues." PolyMedica, 432 F.3d at 5. I do not read PolyMedica as mandating a particular level of factfinding by the district judge at the certification stage.  First, under all the cited cases considerable discretion is left to the district judge.  Second, what is appropriate for determining whether there is an efficient market in a securities case is quite different from market determinations, market behavior and market definitions for antitrust purposes.  I continue to believe that I followed the teaching of PolyMedica correctly in examining the proof the plaintiffs will use and the defenses the defendants will raise.  I have looked "beyond the pleadings," "test[ed] designated premises," "conduct[ed] a rigorous analysis of the [Rule 23] prerequisites," tried to predict "how specific issues will play out," and made the inquiries I believe are necessary.  See May 12 Order at 16-24. PolyMedica also counsels:

> Exercising its broad discretion, and understanding the correct definition [in PolyMedica, of an efficient market] and the factors relevant to that determination, the district court must evaluate the plaintiff's evidence of [in PolyMedica, an efficient market] critically without allowing the defendant to turn the class-certification proceeding into an *unwieldy* trial on the merits.

432 F. 3d at 17 (emphasis original).

I reiterate: for certification of the class, I do not finally determine when pricing impact appeared, disappeared or reappeared in response to varying arbitrage opportunities.  Once the record is complete, that variation may provoke the creation of future subclasses, alteration of the scope of class certification, or judgment for the defendants in whole or in part.  Indeed, the close of discovery and summary judgment practice will soon be upon us.  The defendants can then advance their assertions based upon a complete record.[8]

### *Additional Damage Class Certifications*

The plaintiffs ask me now to certify damage classes for one more exemplar state, Kansas (I earlier declined to do so because their Kansas plaintiff purchased

---

[8] There would also be some procedural unfairness in making an entirely new ruling on the record now.  Magistrate Judge Kravchuk made perfectly clear as she arranged for discovery and briefing on the class-ending-date issue that she was not reopening my original May 12 decision.  Rpt. of June 1, 2006 Disc. Conf. and Order, at 2 (Docket Item 369) ("[W]hile the court certainly wanted to hear from both sides regarding the economic analysis underlying the proposed 'closing date,' this briefing opportunity was not intended as a relitigation of the motion for class certification.").  If I were inclined now to reverse my ruling of May 12, in fairness I would have to allow the plaintiffs fulsome discovery on all the issues that the defendants have posed and give notice that the entire issue of damage class certification was up for reexamination.  For the same reason, I do not resolve a computation controversy the specifics of which emerged just days before the hearing, a controversy that continues to develop.  (On December 1, 2006, Dr. Kalt said that Dr. Hall wrongly interpreted certain data entries made by the Power Information Network, LLC, which compiles automobile pricing data for certain manufacturers, Kalt Rpt. at 24-25; Dr. Hall responded on December 15, 2006, that he had interpreted the data entries correctly, citing published articles, which I have examined.  Hall Rebuttal Rpt. ¶¶ 15-16.  Nothing further happened on the record until February 16, 2007, five days before the February 21, 2007, oral argument, when the defendants filed an affidavit by a Power employee stating that Dr. Hall had misinterpreted the data entries.  Decl. of Mike Murray (Docket Item 519).  Clearly the plaintiffs were not in a position to respond to that late-filed affidavit before the hearing; post-hearing briefing continues to develop the issue.  I learned only yesterday from the defendants' reply memorandum that Power maintains different sets of data with different applicable glossaries.  I am not in a position to resolve that controversy now.)

at a time when the arbitrage opportunity seemed to flow the other direction; now they have a plaintiff who purchased when the arbitrage opportunity was more demonstrable), and for the remaining seventeen states where they have state antitrust and/or consumer protection claims. Initially, I was reluctant, preferring to await any appellate guidance that the defendants might obtain if they persuade the First Circuit to accept their interlocutory appeal. But under Rule 23(f) as amended, each class certification is subject to discretionary interlocutory appeal, so it is preferable to make the certification decisions now. I see no reason to repeat my May 12 exercise for each of Kansas and the other 17 states. The briefing on both sides has been excellent, but neither side has presented anything to show that the substantive laws of any of these additional states will fall outside the range of analysis that I performed in my May 12 Order. I conclude that the May 12 analysis, finding statewide damage classes appropriate under Rule 23(b)(3) for the substantive law of each of the five states then at issue, would produce the same conclusion for a separate statewide damage class here for each of the remaining 18 states.

There is one new issue. The defendants argue that four of the additional states (Georgia, Mississippi, Montana, Utah) prohibit class actions as a matter of state law and, as a result, that I may not certify a statewide damage class for any of those four states.

I start with Mississippi, where the plaintiffs make a state law antitrust claim. Mississippi does not provide for class actions in its state courts at all. That is Mississippi's choice to make as a matter of state procedure for its state courts, but not for the federal courts. The defendants have drawn to my attention no attempt by Mississippi to limit the plaintiffs' *substantive* rights under Mississippi's antitrust law (unlike consumer protection where Mississippi does have a statutory prohibition of class actions. Miss. Code Ann. § 75-24-15(4)). As I stated in my May 12 Order, Federal Rule of Civil Procedure 23 sets the procedural criteria for when class actions are permitted in federal court and a federal judge must follow that Rule. I conclude that a class is properly certifiable under Federal Rule 23 to enforce Mississippi antitrust law. See Hanna v. Plumer, 380 U.S. 460 (1965); 7A Charles Alan Wright et. al., Federal Practice and Procedure: Civil 3d, § 1758 at 118 (3d ed. 2005) ("The Hanna decision resolves any doubt as to the availability of a class action in a federal court under Rule 23 in a diversity action, even in a state that does not recognize the procedure."); Erwin Chemerinsky, Federal Jurisdiction, § 5.3 at 317 (Aspen Law & Business 4th ed. 2003) ("[I]t is now clearly established that the Federal Rules of Civil Procedure . . . are to be applied by the federal court, even if there is a conflicting state requirement and even if the application of the federal Rule might determine the outcome of the case."); Linda S. Mullenix, Should Mississippi Adopt a Class-Action Rule—Balancing the Equities: Ten Considerations that Mississippi Rulemakers Ought to take into

Account in Evaluating Whether to Adopt a State Class-Action Rule, 24 Miss. C.L. Rev. 217, 218-19 & nn.8-9 (2005) (citing several cases involving class action practice under Federal Rule 23 in federal courts based on Mississippi state law claims).

Georgia, Montana and Utah are different.   In each of those states, the plaintiffs' claim arises under the consumer protection statute.   In creating a consumer substantive right to relief, each respective statute defines the damages a consumer can recover by simultaneously eliminating or severely limiting the consumer's ability to use a class action in the process.   Georgia provides that under its consumer protection statute, an injured consumer "may bring an action individually, but not in a representative capacity." Ga. Code Ann. § 10-1-399.  In Montana, a consumer can sue for actual damages, or $500 if greater, and attorney fees, but only as "an individual but not a class action." Mont. Code Ann. § 30-14-133.  Utah allows actual damages, or $2,000 if greater, "but not in a class action" (unless the transaction violated a specific administrative rule or court decision, and then a class action is available).   Utah Code Ann.  § 13-11-19.  I conclude that these three states have gone beyond merely procedural rules and have defined the substantive recovery available to an injured consumer (*e.g.*, an individual fixed-damage recovery floor, but no class recovery) or defined the capacity to sue (no representative capacity).   The First Circuit reads Hanna "as stating a principle for resolving a direct conflict between two strictly procedural

rules," <u>Marshall v. Mulrenin</u>, 508 F.2d 39, 44 (1st Cir. 1974); <u>accord</u> <u>Gil-De-Rebollo v. The Miami Heat Assoc., Inc.</u>, 137 F.3d 56 (1st Cir. 1998). It rejects the proposition "that *Hanna* commands that the Federal Rules be woodenly applied irrespective of a discoverable substantive, as distinguished from a merely procedural, state purpose." <u>Marshall</u>, 508 F.2d at 44. The Seventh Circuit is even more explicit:

> The second class of pretty easy cases is where the state procedural rule, though undeniably "procedural" in the ordinary sense of the term, is limited to a particular substantive area, such as contract law, or tort law. For then the state's intention to influence substantive outcomes is manifest and would be defeated by allowing parties to shift their litigation into federal court unless the state's rule was applied there as well.

<u>S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.</u>, 60 F.3d 305, 310 (7th Cir. 1995) (citations omitted).[9] For Georgia, Montana and Utah the consumer class limitation is substantive.[10] When the issue is one of state substance and federal procedure, the state substantive rule controls. Therefore, I conclude that a

---

[9] <u>Daigle v. Maine Med. Ctr., Inc.</u>, 14 F.3d 684, 689 (1st Cir. 1994), is similar: "Since the federal Evidence Rules governing hearsay and impeachment do not seek to displace the Health Act's policy of limiting frivolous malpractice suits, the federal rules [which the court did *not* enforce] and the state statute can peacefully coexist, each operating within its own sphere of influence."

[10] These states appear to be unlike Alabama, where the state supreme court has held that Alabama's ban on class actions in consumer cases extends to every other state's deceptive practices law if the lawsuit is in Alabama state court and has labeled the bar on class actions as a *procedural* bar. <u>See</u> <u>O'Keefe v. Mercedes-Benz USA</u>, 214 F.R.D. 266, 285 (E.D. Pa. 2003) (discussing <u>Ex Parte Exxon Corp.</u>, 725 So. 2d 930 (Al. 1998)).

statewide damage class is not certifiable for Georgia, Montana and Utah, but is certifiable for each of 15 additional states.[11]

***Trial Manageability***

My May 12 Order assumed a separate trial for each statewide damage class. I then learned that both sides had been proceeding on the understanding that there would be a single trial of all remaining states. I directed the plaintiffs to propose a trial management plan for such an approach. See Procedural Order of June 16, 2006 (Docket Item 376). They have done so, and the defendants have criticized it. I choose not to resolve their disagreements over consolidated trial management at this time. My class certification is state-by-state, not some national, regional, or other grouping of states. Any manageability issues under the class action rules, therefore, should be judged on the basis of each single statewide class, and I conclude (as I did in my May 12 Order) that each statewide antitrust or consumer protection class action is separately manageable. When we are closer to trial, and I can determine how many states remain in play, that will be a better time to assess whether it is best to proceed to trial state-by-state, as I had originally assumed, or allow some kind of consolidation under Fed. R. Civ. P. 42.

---

[11] The states are: Arizona, Arkansas, Idaho, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, North Dakota, South Dakota, West Virginia and Wisconsin.

*Conclusion*

I am prepared now to enter my final order certifying a statewide damage class separately for each of the 20 states. That order is based upon the state substantive law of each of those states and federal procedural (class action) law. By April 11, 2007, the plaintiffs shall file a proposed order that meets all the requirement of Rule 23(c)(1)(B) (defining the class, the claims, issues, defenses and re-appointing class counsel). The defendants shall respond within fourteen days thereafter, but need not renew the objections they have raised already. I defer notice issues (discretionary for the 23(b)(2) injunctive class; mandatory for the 20 separate 23(b)(3) damages classes; mandatory for the proposed settlement classes for defendants Toyota and CADA[12]; and mandatory for the proposed dismissal of NADA) until I understand what the First Circuit intends to do and can hear further about notice from counsel.

SO ORDERED.

DATED THIS 21ST DAY OF MARCH, 2007

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[12] At oral argument I expressed my concern that a class member would not be able to make an intelligent decision whether to opt out of the proposed settlement classes given the current state of proceedings, as well as my concern over the expense and confusion of several successive notices.