UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| IN RE NEW MOTOR VEHICLES | ) | |
| CANADIAN EXPORT ANTITRUST | ) | MDL Docket No. 03-md-1532 |
| LITIGATION | ) | ALL CASES |
|  | ) | |

**MEMORANDUM OF DECISION ON MOTION TO INTERVENE AND
RECOMMENDED DECISION ON MOTION
TO MODIFY PROTECTIVE ORDER**

A collection of plaintiffs in a putative class action proceeding filed in the Superior Court of Justice, Ontario, Canada ("Intervenors"), have moved to intervene in this case in order to seek modifications to the Master Protective Order so that they may obtain copies of discovery materials produced in this litigation. (Mot. to Intervene for the Limited Purpose of Obtaining a Modification of the master Protective Order that Will Allow for Access to Discovery ("Motion to Intervene") (Doc.[1] 980).) The Motion is opposed by the "Non-Settling Defendants" (Doc. 985) and by the National Automobile Dealers Association (Doc. 984). The Court referred the Motion to me on February 11, 2009. Though styled as a singular motion, the Motion to Intervene presents two requests governed by different standards: (1) a request for permissive intervention and (2) a request that the Court modify its Master Protective Order. I address the first part of the request pursuant to 28 U.S.C. § 636(b)(1)(A) because it concerns a non-dispositive, pretrial matter in the nature of a discovery dispute.[2] I would address the second request in the same

---

[1]   Docket entry.

[2]   When referring motions to intervene to magistrate judges under 28 U.S.C. § 636, different judges or districts have taken different approaches to the question of whether a magistrate judge should resolve such a motion in an order or in a recommended decision. Some judges or districts prefer recommended decisions. See Weyend v.

fashion, except for the fact that the Master Protective Order was signed in the first instance by the United States District Court Judge and my conclusion in this case involves a potential modification of that Order which would be best addressed by the judge who signed the original Order. The Intervenors' request to intervene is granted. I further recommend that their request to modify the Master Protective Order may be granted at a later date, subject to a condition set forth at the end of this Memorandum of Decision. A proposed Amended Master Protective Order is attached as Appendix A.

## Background

In this multi-district litigation (MDL Proceeding) the Plaintiffs allege broadly that the Defendants, beginning as early as 2001, entered into a series of agreements in restraint of trade that were designed to prevent new motor vehicles purchased in Canada from entering the United States for resale in order to keep the price of new motor vehicles sold in the United States artificially high. In 2007, a group of Canadian citizens commenced a putative class action, Bester et al. v. General Motors Corporation et al., in the Superior Court of Justice for Ontario, Canada. The defendants in that action are General Motors Corporation, General Motors of

---

Hubman Found., No. 4:06CV343, 2007 U.S. Dist. Lexis 89380, *1-2, 2007 WL 4300477, *1 (**E.D. Tex.** Dec. 5, 2007); Maryland Cas. Co. v. W.R. Grace & Co., No. 88 CIV 2613, 1994 U.S. Dist. Lexis 15322, *33-34, 1994 WL 592267, *10 (**S.D.N.Y.** Oct. 26, 1994) (same); Bramante v. McClain, No. SA-06-CA-10, 2007 U.S. Dist. Lexis 28716, *5, 2007 WL 1173574, *1-2 (**W.D. Tex.** Apr. 17, 2007) (recommending that motion to intervene be denied); Burlington Ins. Co. v. Christ for the Nations, Inc., No. 3:05CV1164LECF, 2006 U.S. Dist. Lexis 57973, 2006 WL 2381862 (**N.D. Tex.** Aug. 17, 2006); Nat'l Union Fire Co. v. Pontiac Flying Serv., No. 03-1288, 2006 U.S. Dist. Lexis 46019, 2006 WL 1881356 (**D. Ill.** July 6, 2006); In re. Infiltrator Sys., Inc., No. 3:98CV1534, 1998 U.S. Dist. Lexis 22916, 1998 WL 1574648 (**D. Conn.** Nov. 6, 1998); Amgen, Inc. v. Chugai Pharm. Co., No. CIV-A-87-2617-Y, 1989 U.S. Dist. Lexis 19150, 1989 WL 87484 (**D. Mass.** May 5, 1989) (denying mot. to intervene in rec. dec.). Others have permitted magistrate judges to dispose of motions to intervene in orders. See Counihan v. Allstate Ins. Co., 907 F. Supp. 54 (**E.D.N.Y.** 1995); Peterson Builders v. A.C. Hoyle Co., 163 F.R.D. 550 (**E.D. Wis.** 1995); Diluzio v. R.L.R. Inv., LLC, No. 05-CV-0586A(Sr), 2008 U.S. Dist. Lexis 39689, *2, 2008 WL 2079919, *1 (**W.D.N.Y.** May 15, 2008); Gateway Fireworks, LLC v. Whiteford Township, No. 07-CV-14961-DT, 2008 U.S. Dist. lexis 35207, 2008 WL 1902205 (**E.D. Mich.** Apr. 30, 2008); WFK & Assocs., LLC v. Tangipahoa Parish, No. CIV.A.06-6684, 2007 U.S. Dist. Lexis 38093, 2007 WL 1537633 (**E.D. La.** May 23, 2007); NRDC v. Gutierrez, No. C 01-0421JL, 2007 U.S. Dist. Lexis 40895, 2007 WL 1518359 (**N.D. Cal.** May 22, 2007); Insignia Sys., Inc. v. New Am. Mktg. In-Store, Inc., No. CIV 04-4213 JRT/AJB, 2006 U.S. Dist. Lexis 94071, 2006 WL 3841510 (**D. Minn.** Dec. 29, 2006); Saltsman v. Valmont Indus., 2006 U.S. Dist. Lexis 84974 (**D. Neb.** Nov. 21, 2006); Rapp v. Cameron, No. CIV A 00-1376, 2001 U.S. Dist. Lexis 17046, 2001 WL 1295606 (**E.D. Pa.** Oct. 18, 2001).

Canada, Ltd., American Honda Motor Company, Inc., Honda Canada, Inc., Chrysler Canada, Inc., Chrysler LLC, Nissan North America Inc., Nissan Canada Inc., Canadian Automobile Dealers Association, BMW Canada Inc., BMW of North America LLC, Ford Canada Inc., and Ford Motor Company.  Many of the defendants in the Ontario proceeding are defendants in this MDL proceeding.

In the Ontario proceeding the Canadian Plaintiffs allege that the defendants engaged in conduct and practices in the 2005 to 2007 timeframe designed to reduce and prohibit the exportation of new cars from the United States to Canada, thereby artificially preventing any reduction in the price of cars sold in Canada.  (Karp Aff. ¶¶ 4-8, Doc. 980-2.)

On December 31, 2008, the Canadian Plaintiffs filed the instant Motion to Intervene, seeking to obtain a modification of the Master Protective Order (MPO).  The MPO imposes obligations on the parties to the MDL Proceeding respecting the release or disclosure of all documents and other materials and information (collectively, "discovery") produced by a party to this proceeding or by third parties, whenever the discovery is designated as confidential or highly confidential by the producing party.  (MPO, ¶¶ 1-5, Doc. 146.)  The Canadian Plaintiffs want the Court to modify the MPO, particularly paragraphs 7 and 13, so that they[3] will be included as persons to whom confidential and highly confidential discovery may be disclosed, in order that the Plaintiffs in this proceeding may share such discovery with them without violating the MPO and in order that they may use the discovery in connection with the Ontario proceeding.

The Canadian Plaintiffs' counsel, Mr. Eliezer Karp of Juroviesky & Ricci LLP, of Toronto, Ontario, Canada, represents that:

---

[3] The proposed modified MPO would permit disclosure to the Canadian Plaintiffs' counsel and their staff, to the Canadian Plaintiffs, to outside consultants retained in connection with the Ontario litigation, to deponents and witnesses and their counsel in the Ontario proceeding and to the Ontario courts and their personnel.  (Motion to Intervene Ex. 2, [Proposed] Amended Master Protective Order ¶¶ 7(b), (f)-(i) & 13(b), (f)-(i), Doc. 980-3.)

> Counsel and Canadian Plaintiffs have reviewed the protective order entered in the MDL Proceeding and agree to abide by the terms of the order with respect to any materials or testimony that they may obtain. Upon grant of our motion to intervene in this litigation counsel and Canadian Plaintiffs will submit to the personal jurisdiction of the U.S. District Court for the District of Maine for the purpose of enforcement of the Master Protective Order.

(Karp Aff. ¶ 15.)

## Discussion

When it comes to third-party challenges to protective orders, intervention under Rule 24 is "*the* procedurally correct course" for the third-party to follow. Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 783 (1st Cir. 1988) (agreeing with and quoting In re Beef Indus. Antitrust Litig., 589 F.2d 786, 789 (5th Cir. 1979), and also adding emphasis). There are two weigh stations along the path. First, the prospective intervenor must satisfy the requisites of Rule 24. Second, the intervenor must next persuade the court that it should modify its protective order in light of changed circumstances. Id. at 782, 785; Cullbreath v. Dukakis, 630 F.2d 15, 20-24 (1st Cir. 1980).

**A.     Intervention**

Intervenors seek to intervene under Rule 24(b), which allows the Court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As Intervenors argue (Mot. to Intervene at 6, 11), this initial requirement is met here because they request intervention only for the limited purpose of seeking modification of the MPO and all of the parties share a common interest in the maintenance or modification of the MPO. Public Citizen, 858 F.2d at 783-84 (holding that "third-party claims of access to information generated through judicial proceedings" are "legitimate interests" for purposes of permissive intervention and affirming district court's "implicit" recognition of such a claimant as a "proper party"); Pansy v. Borough of Stroudsburg,

23 F.3d 772, 778 (3d Cir. 1994) ("By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action.").[4]

In the particular context where the intervenors are collateral litigants seeking access to discovery materials protected by a court order, courts have considered as an additional factor whether the main action and the collateral action are sufficiently similar so that the materials pursued by the intervenors are apt to be relevant to the collateral proceeding, though a "strong nexus of common fact or law" is not required. Meyer Goldberg, Inc. v. Fisher Foods, 823 F.2d 159, 164 (6th Cir. 1987). See also In re Linerboard Antitrust Litig., 33 F. Supp. 2d 333, 339 (E.D. Pa. 2004) ("Courts have regularly held this requirement satisfied if the movant raises a common question in a suit in another jurisdiction."); Kerasotes Mich. Theaters, Inc. v. Nat'l Amusements, Inc., 139 F.R.D. 102, 103 (E.D. Mich. 1991) ("[W]hen intervention for purposes of discovery is thus sought, and the two actions involve the same defendants charged with anti-competitive conduct, no stringent showing of a strong nexus of common fact or law is required."). Intervenor's complaints of anticompetitive conduct are sufficiently similar to the claims advanced in the instant action. Although Non-Settling Defendants maintain that the

---

[4] When a movant seeks to intervene for purposes of asserting an additional cause of action, the movant must additionally demonstrate an independent ground for subject matter jurisdiction over the new cause. Int'l Paper Co. v. Jay, 887 F.2d 338, 346 (1st Cir. 1989) ("As this court has previously stated, 'permissive intervention ordinarily must be supported by independent jurisdictional grounds.'") (quoting Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 52 n.5 (1st Cir. 1979)). However, the right of access to information generated in a public proceeding but shielded from view by a protective order is a presumptively valid ground for intervention. Public Citizen, 858 F.2d at 783-84; see also Pansy, 23 F.3d at 778 n.3 ("[A]lthough permissive intervention ordinarily requires independent jurisdictional grounds, an independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits. Thus, in cases where intervenors seek to modify an order of the court, the court has jurisdiction based on the fact that it already has the power to modify the protective order and no independent jurisdictional basis is needed.") (citing Beckman Indus. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir.), cert. denied, 506 U.S. 868 (1992)). This rationale has been extended to circumstances in which collateral litigants seek access to discovery in order to use it in a collateral proceeding. EEOC v. Nat'l Children's Ctr., 146 F.3d 1042 (D.C. Cir. 1998); In re Linerboard Antitrust Litig., 333 F. Supp. 2d 333, 339 (E.D. Pa. 2004)

allegations in the Ontario proceeding "conflict" with the allegations in this proceeding, because they focus on cross-border trade traveling in the opposite direction (Non-Settling Defs.' Opposition at 1-2), the commonality between the two cases is more than apparent when the alleged anticompetitive policies and practices are considered.  Both cases involve allegations of the same anticompetitive conduct, occurring in contiguous or overlapping time frames, which could have been employed by the Defendants to influence trade on either side or both sides of the international boundary, depending on varying economic conditions.  This commonality between the two actions is sufficient to satisfy the requirements of intervention for purposes of discovery, assuming that commonality between the two actions is a necessary prerequisite to such intervention under Rule 24.

In addition to requiring that the claims or defenses of intervenors present questions of law or fact in common with the main action, the Rule requires that the Court "must consider whether the intervention will unduly delay or prejudice *the adjudication* of the original parties' rights." Fed. R. Civ. P. 24(b)(3) (emphasis added).  There is no apparent way by which the requested intervention should unduly delay or prejudice the adjudication of the claims or defenses advanced in the main action.  Indeed, it is not easy to understand how the Motion to Intervene would disrupt the Court's calendar at all in light of the fact that only the MPO is at issue and the Intervenors do not seek any new discovery, only access to what the Plaintiffs have already obtained.  Nevertheless, this is a discretionary matter and the timeliness consideration is to be guided by four factors:  (1) the length of time the Intervenors knew of their interest before petitioning to intervene;  (2) prejudice that befalls the existing parties on account of the Intervenors' delay;  (3) prejudice that befalls the Intervenors if not allowed to intervene;  and (4)

the existence of significant *ad hoc* circumstances weighing one way of the other.  Public

Citizen,858 F.2d at 785-87;  Cullbreath, 630 F.2d at 20-25.

       1. *Length of time*

"[T]he appropriate inquiry is when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties."  Public Citizen, 858 F.2d at 785.  The MPO issued August 11, 2004.  (Doc. 146.)  The Intervenors filed the pending motion on December 31, 2008.  (Doc. 980.)  The Intervenors do not necessarily stumble over this four-year delay.  They did not commence their action in Ontario until September of 2007.  (Karp Decl. ¶ 2, Doc. 980-2.)  Moreover, discovery has yet to commence in their case.  (Id. ¶ 12.)  The Intervenors describe their interest in the MPO in terms of its tendency to assist them in their own discovery quest by obtaining copies of discovery produced in this proceeding.  (Id. ¶ 14.)  I conclude that this showing is sufficient to satisfy the first timeliness factor.  Running from the commencement of their own action, Intervenors have waited roughly a year and a half to file their Motion to Intervene in this action for discovery purposes.  That delay does not strike me as troubling.   Additionally, the First Circuit has observed that in cases like this, where third parties seek to intervene for the limited purpose of challenging a protective order, courts have permitted intervention even years after the entry of judgment.  Public Citizen, 858 F.2d at 785.

       2. *Prejudice to Defendants caused by delay*

The second timeliness factor concerns "prejudice to existing parties due to [the] delay in intervening."  Id. at 786.  The Non-Settling Defendants do make a prejudice argument.  They say that they have produced millions of documents in reliance on the MPO and that collateral litigants should not be permitted to access that information absent exceptional circumstances.  (Non-Settling Defs.' Opposition Mem. at 9.)  I address this argument in the subsequent section

7

concerning modification of the MPO because I regard it as a Rule 26(c) concern respecting modification of a protective order, rather than a Rule 24(b) concern. I base that conclusion on the fact that the Intervenors seek only to challenge a protective order and do not threaten to disrupt the existing proceedings or prejudice the Defendants with respect to the adjudication of their rights in the main action. Public Citizen, 858 F.2d at 786 (holding that delay in intervention for purposes of addressing a "discrete and ancillary issue" related to a protective order and unrelated to the merits causes "little prejudice").[5] I note that Non-Settling Defendants brief the issue in that exact fashion, discussing prejudice and their reliance interest in a section of their brief addressed to amendment of the MPO (Non-Settling Defs. Opposition at 9), without asserting prejudice or reliance in their opposition to permissive intervention (id. at 1-4). Intervention under the circumstances of this case will not prejudice the Defendants in regard to the adjudication of their rights in the MDL Proceeding.

   *3.  Prejudice to Intervenors if intervention is denied*

The Intervenors assert that they should not be required to reinvent the wheel where discovery is concerned and that they should be permitted to take advantage of the efficiencies that would result from modification of the MPO. Because there is no significant prejudice to the Defendants arising from the delay associated with the Motion to Intervene, there is no need to determine whether prejudice to the Intervenors arising from denial of intervention would outweigh any prejudice to the Defendants.

   *4.  Special circumstances*

Non-Settling Defendants contend that the Intervenors should be denied access to discovery materials produced in this case because to allow access would circumvent discovery

---

[5] See also Public Citizen, 858 F.2d at 787 (adopting the view that prejudice arising from late access to discovery materials "should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order") (quoting Mokhiber v. Davis, 537 A.2d 1100, 1106 (D.C. 1988)).

restrictions imposed by Canadian law. They posit that because the Intervenors are not yet entitled to commence court-sanctioned discovery in the Canadian proceeding, it would undermine Canadian law to permit the Plaintiffs in this action to share with the Intervenors discovery produced by the Defendants. (Non-Settling Defs.' Opposition at 4-5.) They cite an unpublished order issued by Judge Dalzell of the Eastern District of Pennsylvania in the matter of In re: Hydrogen Peroxide Antitrust Litigation. (Id. Ex. 3, Doc. 985-4.) There, Judge Dalzell summarily concluded that Canadians seeking to intervene in the District of Pennsylvania proceeding were attempting to bypass the rules of the Canadian court system because they wanted to obtain discovery through intervention at a time when they could not yet initiate discovery in the Canadian action. (Id.)

      The Intervenors have a reassuring response to this theory. They cite decisional law from the Ontario Superior Court of Justice to the effect that intervention in a proceeding before a United States court for purposes of accessing discovery already acquired by the parties to the American litigation does not undermine Canadian law. In Vitapharm Canada Limited v. Hoffman-La Roche Limited, Judge Cumming of the Ontario Superior Court of Justice addressed a question of first impression when class action defendants requested that the judge enjoin class action plaintiffs "from gaining access to documentary and deposition evidence from discovery in United States litigation dealing with claims analogous to those seen in this Canadian action." [2001] O.T.C. 47, ¶ 1. The plaintiffs in that action were engaged in an effort to intervene in United States MDL litigation for purposes of obtaining access to discovery already available but subject to a protective order, just as the Intervenors here are attempting. Id. ¶¶ 4, 19, 20. The defendants sought an order "requiring the plaintiffs to discontinue and withdraw the U.S. motion." Id. ¶ 23. The Court observed:

9

> As a result of the inexorable forces of globalization and expanding international free trade and open markets, there will be an ever-increasing inter-jurisdictional presence of corporate enterprises. This is seen particularly in respect of American and Canadian business activity, given the extent of cross-border trade. If both societies are to maximize the benefits of expanding freer trade and open markets, the legal systems of both countries must recognize and facilitate an expeditious, fair and efficient regime for the resolution of litigation that arises from disputes in either one or both countries.

Id. ¶ 27. The defendants argued that the Court should enjoin the plaintiffs because they might obtain "early" discovery and "nonparty" discovery not yet available in the Canadian proceeding. Id. ¶ 30; see also id. ¶ 38 (observing that the Canadian class was not yet certified and was therefore subject to discovery restrictions). Judge Cumming flatly rejected this notion: "The plaintiffs are not seeking discovery in the U.S. through their U.S. Motion. Rather, they are only seeking access to the discovery of the litigants in the U.S. Litigation. From a legal standpoint, the U.S. Motion is only necessary because of the Protective Order." Id. ¶ 31. The judge observed: "A Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts." Id. ¶ 45. The Ontario court denied the defendants' request for injunctive relief, despite objections pertaining to confidentiality, because confidentiality was a concern to be addressed by the United States court and also because the plaintiffs represented that they would consent to an order of the Canadian court "if the defendants see that to be of assistance in maintaining confidentiality and the sanctity of the Protective Order." Id. ¶ 47. Recognizing the potential to save "considerable time and money in the Canadian proceedings," and the possibility that the plaintiff might "determine earlier and with greater certainty the nature and extent of the precise evidence available that is relevant to the Canadian proceedings," id. ¶ 48, Judge Cumming concluded that "[t]he plaintiffs' request for access to discovery evidence which they believe necessary to prepare their case in Canada, a

10

request made through means lawful in the United States, does not violate the rules and procedure of this court." Id. ¶ 50. This decision was subsequently affirmed by the Divisional Court, as well as by the Court of Appeal for Ontario. (See Court of Appeal Endorsement, Doc. 980-2 at 84.) The Court of Appeal for Ontario observed, among other things:

> To the extent that [a United States judge] is concerned about the type of order that a Canadian court could make to ensure compliance in Canada with his protective order, we see no impediment to his making any variation of his order conditional upon it being matched by an order of similar nature from the Superior Courts of the provinces in which Canadian litigation is proceeding.

(Id. at 86, ¶ 6.)

I find that Judge Cumming's decision in Vitapharm undermines the Non-Settling Defendants' argument that the Intervenors are attempting to circumvent Canadian law pertaining to the timing of discovery in Canadian litigation. With this obstacle overcome, I conclude that intervention is appropriate in this matter. Whether, when and how to modify the MPO is another question.

**B.     Modification**

The issuance of protective orders is governed by a good cause standard. Fed. R. Civ. P. 26(c)(1). Nevertheless, the Non-Settling Defendants argue that they have produced documents in reliance on the MPO and that collateral litigants should not be permitted to access that information absent "exceptional circumstances" or proof that the MPO should not have issued in the first place.[6] (Non-Settling Defs.' Opposition Mem. at 9.) They cite AT&T Corp. v. Sprint Corp., 407 F.3d 560 (2d Cir. 2005). Among the rationales offered by the Second Circuit for its

---

[6] The National Automobile Dealers Association (NADA) also opposes modification of the MPO. NADA is a former party to this Proceeding but is not named as a defendant in the Ontario Action. NADA reveals that it has already provided certain documents to counsel for the Canadian Plaintiffs on a voluntary basis, provided that counsel would disclose the documents only within counsel's firm and to persons working with the firm. (NADA Opposition Mem. at 1, Doc. 984.) They argue that the Canadian Plaintiffs "should not now be allowed less restrictive access." (Id. at 2.) I am not persuaded that NADA's prior, voluntary disclosure of some documents places their non-disclosed discovery materials in a special category deserving special protection.

"exceptional circumstances" standard was the notion that "[i]t is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'" Id. at 562 (quoting S.E.C. v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001)).  Non-Settling Defendants also argue that notice and an opportunity to be heard should be extended to third parties such as J.D. Power and KPMG and to former parties such as Toyota and Mercedes, all of whom produced materials in this case. (Non-Settling Defs.' Opposition Mem. at 10 n.8.)  The Intervenors assert that there is no prejudice for the Non-Settling Defendants in relation to the main action because the Motion to Intervene should not disrupt these proceedings. (Mot. to Intervene at 9-10.)  They cite precedent to the effect that it makes no sense to make them "reinvent the wheel" through new and comprehensive discovery initiatives "when much of the same discovery has already taken place in this action."  (Id. at 10, quoting Kraszewski v. State Farm Gen. Ins. Co., 139 F.R.D. 156, 160 (N.D. Cal. 1991).)  They assert that "[t]he need to avoid duplication and waste is particularly apparent in litigation of this magnitude."  (Id. at 11.)

     There are divergent lines of thinking on this issue.  One view is the view expressed by the Second Circuit in AT&T Corporation v. Sprint Corporation that it is presumptively unfair to modify a protective order once parties have relied on it.  407 F.3d at 562.  The Second Circuit has held previously that modification of a protective order requires a showing of "extraordinary circumstance or compelling need" if the result of modification would be to allow third-party access.  Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979).  On the other hand, there is the view that *bona fide* collateral litigants should gain access to discovery because the reliance interest of objecting parties "can be preserved by subjecting the intervenor to the provisions of a protective order" in cases where protection is required.  In re Linerboard Antitrust Litig., 333 F. Supp. 2d 333, 340 (E.D. Pa. 2004) (involving Canadian intervenors); see also Foltz

12

v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131-32 (9th Cir. 2003) ("Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted.").

The First Circuit has rejected the extraordinary circumstances standard set out in Martindell, observing that application of this standard would only arguably be appropriate where the government is the third party seeking modification. Public Citizen, 858 F.2d at 791. Based on Public Citizen, it is highly unlikely that the First Circuit would find it an abuse of discretion to modify a protective order to permit third-party access by collateral litigants, particularly if the collateral litigants are made subject to the provisions of the protective order. That approach is the most appropriate approach in this case, I conclude, because it protects the Defendants (and third parties) who produced confidential discovery material in reliance on the MPO and simultaneously preserves the efficiency interests of the Intervenors as well as the interest of judicial economy.

There is one remaining hurdle, however. It is not clear that making the Intervenors subject to the MPO based on their voluntary submission to this Court's jurisdiction offers sufficient protection to the parties against a breach of confidentiality in Canada. The specter of being sanctioned under Rule 37(b) has little or no meaning where the Intervenors have no abiding claim in this Court. Consequently, violation of the protective order would have to be remedied through an exercise of contempt powers. Public Citizen, 858 F.2d at 782. The Supreme Court of Canada has held that Canadian courts may not enforce contempt orders issued

13

by the courts of the United States. Pro Swing Inc. v. Elta Golf Inc., 2006 SCC 52, ¶¶ 34-39, 62.[7] Given this predicament, I would condition modification of the MPO on the Intervenors' acquisition of an order from the Ontario Superior Court of Justice that requires the Intervenors to comply with the terms of the draft, amended MPO attached to this order. This process would be consistent with the suggestion made by Judge Cumming in the Vitapharm case and would definitively put to rest any suggestion that the Intervenors had somehow circumvented Canadian law by obtaining modification of the MPO in this country. It would also provide the Defendants in this action with a viable enforcement mechanism should there be any violation of the protective order. In the absence of unauthorized disclosure of this information, it is in the interest of both judicial economy and cost efficiency to allow the Canadian Plaintiffs access to this already compiled information. The Plaintiffs in this action have no objection to producing the material already in their possession, subject to the terms of a modified MPO.

I recommend this Court issue an amended MPO upon receipt of suitable evidence that this condition relating to an order from the Ontario Superior Court of Justice has been satisfied. A copy of a Proposed Amended MPO is attached as an appendix to this Memorandum of Decision and Recommended Decision. Amendments are highlighted in italic print.

### CERTIFICATE

Any objection to the decision regarding the motion to intervene shall be filed in accordance with Fed. R. Civ. P. 72.

---

[7] Westlaw users will have more success "keyciting" 273 D.L.R. (4th) 663. The Canadian Case Citiations Supplement Vol. 15 (2008) does not record any subsequent reconsideration of this issue by the Supreme Court of Canada through June of 2008.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 26, 2009