The Honorable D. Brock Hornby

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| *In re:* | MDL Docket No. 03-1532 |
| *New Motor Vehicles Canadian Export Antitrust Litigation* | **CLASS ACTION**<br><br>**NOTICE OF APPEARANCE AND OBJECTION TO PROPOSED SETTLEMENT AND PROPOSED ATTORNEYS' FEE AWARD**<br><br>NOTE ON MOTION CALENDAR:<br>February 18, 2011 at 10 a.m. |

Daniel Greenberg
(AR BAR 2007193)
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
DnGrnbrg@gmail.com
(501) 588-4245
Attorney for Objector Theodore H. Frank

# TABLE OF CONTENTS

INTRODUCTION ……………………..………………………………………………1

ARGUMENT …………………………………………………………………………...2

    **I.**    Background: The Objector and the Center for Class Action Fairness……...2

    **II.**    The Court Has a Duty under Rule 23 to Protect Class Members From an Unfair Settlement ………………………………..…………………………3

    **III.**    The *Cy Pres* Provision Is Defective in Multiple Respects ……………..…6

           **A.**    The Court Should Reject This Settlement's Use of a *Cy Pres* Award, because It Will Diminish Compensation to Deserving Class Members…………………………………………………….……7

           **B.**    The Court Should Reject This Settlement's Use of a *Cy Pres* Award, because the Failure to Identify the Object of the Awards or the Approximate Size of the Claimant Group Gives Class Members No Opportunity to Object ………………………………..…………..10

           **C.**    In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a Class Benefit When Calculating Attorneys' Fees. ………….. 11

    **IV.**    Multiple Factors Make The Settlement's Assignment of 30% of the Recovery to Attorneys' Fees Too High ………………..…………………12

CONCLUSION…………………………………..………………………………………15

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) …..…………………3

*Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000)………….. 12

*Gottlieb v. Barry,* 43 F. 3d 474, 487 (10th Cir. 1994)…………………………………….. 12

*Government Employees Hosp. Ass'n v. Serono Intern., S.A.,* 246 F.R.D. 93, 95 (D. Mass. 2007) ……………………………........................…………………………….. 8

*Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) …………………...…4

*Grunin v. International House of Pancakes,* 513 F.2d 114, 123, 127 (8th Cir. 1975)………………………………………………………………………… 4, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ………...............………5

*In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002) …..…… 6

*In re American Tower Corp. Securities Litig.*, 648 F. Supp. 2d 223, 224-25 (D. Mass. 2009)………………………………………………………………….…..... 6, 7-8

*In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001)…………...……….1, 4

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2005 U.S. Dist. LEXIS 16468 (D. Me. Aug. 9, 2005)……………………………..…………………………… 6

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 350–51 & nn.75, 76 (N.D. Ga. 1993) …………………………………...……………………………………….. 13

*In re First Fidelity Securities Litigation*, 750 F.Supp. 160, 164 n. 1 (D. N.J. 1990) …... 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir. 1995)……………………………………………………………….. 4, 5

*In re Lupron Marketing and Sales Practices Litigation,* 228 F.R.D. 75, 93 (D. Mass. 2005) …………………………………………………….…………………………….4

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) …..……… 9-10

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998)…………………………………………………………………… 13-14

*In re New Motor Vehicles Canadian Export Antitrust Litigation,* 632 F.Supp.2d 42 (D. Me. 2009) ……………………………,,,,,,,,,,,,,,,……………………………………… 14

*In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24, 33, 34-35 (1st Cir. 2009) ………………...………………………………………………………………… 7, 10

*In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 82 (D. Mass. 2005) ……................... 3

*In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D.Mass. 2005) ………...8

*In re Tyco Intern., Ltd. Multidistrict Litigation,* 535 F. Supp.2d 249, 259, 262 (D.N.H. 2007) ……………………………………………………………………………… 5, 8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1297–98 (9th Cir. 1994) …………………………………………………...……………………… 13

*In re Wells Fargo Securities Litig.*, 991 F. Supp. 1193, 1197 (N.D. Ca. 1998) ……...…..6

*Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007………………… 6

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784, 785 (7th Cir. 2004)…………1, 12

*Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) ………………………...……..6

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ……………….. 12

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002) ……………... 4

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005) ……………………………………………….………........................................6

*SEC v. Bear, Stearns & Co.*, 626 F. Supp. 2d. 402, 415 (S.D.N.Y. 2009)………………………………………………………………………. 6

*Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992) …………………………….…..4

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)..10

*Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ……………………...…… 5

*Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ……………….....…. 13

*Weinberger v. Great Northern Nekoosa Corp.,* 925 F. 2d 518, 525 (1st Cir. 1991) …... 14

## OTHER AUTHORITIES

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010) ……………………………………………………………...…………………………. 7, 11

John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010) …………………………………………………………………………. 9

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36 ………………………………………………………………………… 2

*Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237, 256 (1985) …………………………………………………………………………13

Adam Liptak, *Doling Out Other People's Money*, N.Y. Times (Nov. 26, 2007) ……………………………………………………………………………………. 9

Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)……………………………………………………………………………… 5

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002) ……………………………………..……………………………………… …………..4

Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) …..…………………. 9

Editorial*, When Judges Get Generous; A better way to donate surpluses from class-action award*s, Wash. Post (Dec. 17, 2007) …………………………………………... 9

Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 Columbia Bus. L. Rev. 1014 ……………………………………………….......................................……. 9

# INTRODUCTION

"Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). In class actions "there is often a conflict between the economic interests of clients and their lawyers, and this fact creates reason to fear that class counsel will be highly imperfect agents for the class. Because of this conflict (and because "the class" cannot counteract its effects via counsel selection, retention, and monitoring), an agent must be located to oversee the relationship between the class and its lawyers. Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001).

The proposed settlement agreements in this case (hereinafter referred to as a single agreement) demonstrate why judicial scrutiny is necessary. Attorneys for the class have structured the settlement so as to pay themselves an inflated rate of compensation to which opposing parties cannot object, while providing plaintiffs—whose interests counsel is charged to represent—relatively little redress. Furthermore, the settlement's *cy pres* provision is contrary to law in three different respects, further impoverishing the plaintiffs whose interests the settlement is allegedly designed to serve. In light of the proposed settlement agreement's failure to accord its putative beneficiaries the

compensation they deserve as a matter both of fairness and of settled law, the Court should reject this settlement.

## ARGUMENT

### I.      Background: The Objector and the Center for Class Action Fairness.

Theodore H. Frank (contact information: 1718 M Street NW, No. 236, Washington, DC 20036 – (703) 203-3848) purchased a new Toyota Prius from Toyota Santa Monica of Santa Monica at some time between January 1, 2001 and May 1, 2001. Mr. Frank was a resident of California, living at 7660 Beverly Boulevard in Los Angeles, at the time of the Toyota purchase. Mr. Frank, a current resident of Virginia, is therefore both a class member and an eligible claimant under the terms of the settlement.

Mr. Frank is also the founder of The Center for Class Action Fairness. The attorneys engaged by the CCAF, a non-profit program of the 501 (c)(3) DonorsTrust, represent consumers *pro bono*. It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys that attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009), 1635-36. This is not the business model of The Center for Class Action Fairness.

While the Center focuses on bringing objections to unfair class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys. Furthermore, the Center has never settled an objection.   The Center analyzes complaints from consumers aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members; as a non-profit with limited resources, it must restrict itself to objecting only to the most egregiously bad settlements.   The Center's litigation on behalf of consumers has been covered by *Forbes* and the *National Law Journal*; it is featured in the April 2010 issue of the *ABA Journal*.

Mr. Frank's counsel intends to appear and object in person at the final approval hearing. He reserves the right to cross-examine any witnesses who testify in support of settlement approval.

## II.    The Court Has a Duty under Rule 23 to Protect Class Members From an Unfair Settlement.

"Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D.Mass. 2005), citing *inter alia Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed

to by 'fainthearted' or self-interested class 'representatives.'"); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement).

Because class actions can create unique conflicts of interest between lawyers and their clients, an independent agent is needed to oversee this relationship: "Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001). "The court has a fiduciary duty to absent members of the class in light of the potential for conflicts of interest among class representatives and class counsel and the absent members." *In re Lupron Marketing and Sales Practices Litigation,* 228 F.R.D. 75, 93 (D. Mass. 2005). "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; the settlement must be objectively reasonable as well. There is a need for "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained."). A court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d at 785 (quoting Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)). At a minimum, "the First Circuit … requires a wide-ranging review of the overall reasonableness of the settlement." *See In re Tyco Intern., Ltd. Multidistrict Litigation,* 535 F. Supp.2d 249, 259 (D.N.H. 2007).

In its Memorandum Order of August 17, 2010, this court discussed the Rule 23 (a)(4) interests implicated by this class action, concluding that appropriate measures had been taken to ensure that there were no intraclass conflicts and therefore that the interests of the class members would be fairly and adequately protected. However, that analysis did not reach the question of the Rule 23 (a)(4) interests at stake when there are conflicts

not between class members, but rather (as discussed immediately below) between attorney and client.

## III.    The *Cy Pres* Provision Is Defective in Multiple Respects.

In the last decade, courts have repeatedly rejected settlements because of inappropriate *cy pres* awards. *See, e.g., Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) (reversing settlement approval); *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (reversing settlement approval); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002) (reversing settlement approval); *In re American Tower Corp. Securities Litig.*, 648 F. Supp. 2d 223, 224-25 (D. Mass. 2009); *SEC v. Bear, Stearns & Co.*, 626 F. Supp. 2d. 402, 415 (S.D.N.Y. 2009); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005); *In re Wells Fargo Securities Litig.*, 991 F. Supp. 1193, 1197 (N.D. Ca. 1998); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2005 U.S. Dist. LEXIS 16468 (D. Me. Aug. 9, 2005). A defective *cy pres* agreement makes for a defective settlement.

This *cy pres* award is defective in three respects. It diminishes the compensation available to class members, it denies class members the opportunity to object to the *cy pres* recipient, and it designates benefits to a third party as benefits to the class (thus ratcheting up attorneys fees). In short, the *cy pres* provision harms the interests of the class.

**A.     The Court Should Reject This Settlement's Use of a *Cy Pres* Award, because It Will Diminish Compensation to Deserving Class Members.**

The proposed *cy pres* award is a breach of class counsel's fiduciary duty to the class. It places a higher value on distributing funds to a third party over recovery to the unnamed class members; it implies a failure to fairly and adequately represent the class. American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010) ("ALI *Principles*"). This alone provides sufficient reason for the court to reject the proposed settlement.

Class counsel owes a fiduciary duty to their putative class clients to put the clients' interests first in negotiating a settlement. *Cy pres* may be appropriate if the class is not easily ascertainable, if the transaction cost of distributing a small settlement among many class members is not feasible, or if class members have already been fully compensated. *In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24, 34-35 (1st Cir. 2009) (approving *cy pres* of unclaimed funds because district court ensured full treble recovery of class members first), ALI *Principles* 3.07 (b). The settlement's proposal to eliminate compensation to all those who would otherwise receive less than $5.00 is unreasonable: a settlement with a large number of small beneficiaries would economically use a *cy pres* remedy "only where the cost per class member of distributing the residual funds substantially outweighs the amount each class member would receive." *In re American Tower Corp. Securities Litigation,* 648 F.Supp.2d 223, 224 n.1 (D.Mass.

2009). There's no difference between the administrative cost of distributing $200.00 checks as compared to $2.00 checks; the $5.00 threshold is unreasonably high.

A *cy pres* distribution which would only become operational once all class members have been fully compensated is, as such, unobjectionable; *see In re Tyco Intern. Ltd. Multidistrict Litigation*, 535 F. Supp.2d 249, 262 (D. N. H. 2007) ("The plan calls for the continued re-distribution of unclaimed funds  to class members according to their pro rata shares, until the costs of such redistributions make it economically unfeasible to continue doing so. If and when that point is reached, then the balance of the fund will be subject to a *cy pres* remedy."); *Government Employees Hosp. Ass'n v. Serono Intern., S.A.,* 246 F.R.D. 93, 95 (D. Mass. 2007) (Settlement amount "specifically allocated" to class members; "This amount was expected to be sufficient to fully pay all of the claims"; "Any excess was to be distributed as a *cy pres* fund"). *See also In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 82 (D. Mass. 2005) (*cy pres* award made only after "great efforts to ensure that individual consumers" were rewarded and "in light of the very weakness of the claims" of some subclass members). But because the settlement at issue here already contains a method to distribute funds to class members, using *cy pres* to lop off a chunk of what rightfully should go to class members is inappropriate here.

There is no defensible reason to have ***any*** *cy pres* distribution in this settlement until the class members are completely compensated. Class counsel's desire to assign a discrete third party hundreds of thousands of dollars at the expense of providing a few dollars to thousands of faceless clients is without lawful foundation.  Perhaps the class counsel wants the ability to issue a press release suggesting that their law firms are

generous donors to a public-spirited organization, when in fact they are spending their putative clients' money.  A charity to be named later is not the class counsel's client; the class members are.  And the failure of class counsel and the class representative to put the interests of the class first in negotiating this settlement raises severe Rule 23(a)(4) concerns: how can these parties be said to fairly and adequately represent the class when the proposed settlement pursues the interests of third parties at the class's expense?

The ALI is not alone in noting the inherent conflicts of interest raised by *cy pres* distributions.  *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) (*cy pres* "threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's unlawful behavior"); John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 Columbia Bus. L. Rev. 1014; Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action award*s, Wash. Post (Dec. 17, 2007) ("Federal judges are permitted to find other uses for excess funds, but giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful. In all but the rarest of circumstances, those funds should be made available to individual plaintiffs and not to outside organizations—no matter how worthy"); Adam Liptak, *Doling Out Other People's Money*, N.Y. Times (Nov. 26, 2007).

The way to avoid these conflicts of interest is to forbid *cy pres* awards except in the narrow circumstance where non-windfall pecuniary relief to the class is not feasible. For this reason alone, the settlement should be rejected.

**B.    The Court Should Reject This Settlement's Use of a *Cy Pres* Award, because the Failure to Identify the Object of the Awards or the Approximate Size of the Claimant Group Gives Class Members No Opportunity to Object.**

As noted above, courts permit *cy pres* distributions in very limited contexts; the central rule of the *cy pres* doctrine is that it may be used "for another purpose as close as possible" to the original purpose. See *In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d at 33. Conversely, a *cy pres* award "will be rejected when the proposed distribution fails to provide the 'next best' distribution." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). Any such distribution must "adequately target the plaintiff class." *Id.* But class members are entirely without notice of the recipient(s) of the *cy pres* award; their identity or identities apparently will not be established until after the objection deadline has passed. This is wrong. The opacity of this *cy pres* award denies class members the information they need in order to evaluate the proposed distribution. Disclosure of the *cy pres* recipient(s) will create a material change in the settlement. The court must not approve the settlement without providing the class a full and fair opportunity to object to the materially changed settlement. See, e.g., *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir.

2010). New notice to objectors would be required before the court approves the settlement.

Relatedly, because there is no way for any class member to gauge the number of claimants in the class, there is also no way for any class member to derive the value of any individual settlement by completing the agreement's proposed equation, given that its result is a function of (among other things) the number of class members who request compensation. This difficulty is exacerbated by the presence of a *cy pres* clause, because there is presently no way for class members to evaluate the dollars-and-cents impact of a *cy pres* award upon the common fund payable to class members as a whole. This combination of unknowns, which at best grants class members – who are, of course, entitled to know how they each might be compensated – meager knowledge that is only of a highly abstract and unsatisfactory kind (and, arguably, no real knowledge at all). This informational vacuum worsens the already deficient notice (because of the undisclosed *cy pres* parties) that class members will receive; because they will not receive the notice they are entitled to in order to make an informed decision, their opportunity to object to the settlement will never occur.

C.      **In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a Class Benefit When Calculating Attorneys' Fees.**

In the event the court decides to disregard both the ALI *Principles* and legal precedent on the several principles of *cy pres* relief which this settlement ignores, the court in any event should not recognize a six- or seven-figure *cy pres* fund as a class

benefit when calculating attorneys' fees. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000). As noted above, a charity to be named later is not the class counsel's client; the class members are.

## IV.   Multiple Factors Make The Settlement's Assignment of 30% of the Recovery to Attorneys' Fees Too High.

Class counsel has requested payment of 30% of the $37 million proposed settlement. (The 30% rate combines counsel's requested fees and requested expenses. No matter whether the settlement labels any particular expenditure of money a fee or an expense, the money is still an expenditure that will never make it to the class — those in whose name the suit was brought.) The requested percentage is significantly above the 25% benchmark that typically is appropriate in a class action of this size; it flunks Rule 23(h)'s test that attorneys' fees be "reasonable." Because so many factors in this case argue in favor of a lower fee, the court risks abusing its discretion if it assigns 30% of the settlement to the attorneys.

Attorney compensation should be awarded so that it "reasonably compensate[s] the attorneys for their services yet are not excessive, arbitrary, or detrimental with respect to the class." *Grunin v. International House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975). The 30% figure is excessive. Class counsel's proposed award approaches the

stereotypical one-third portion that is negotiated for *individual* contingency fees. This award is significantly above the 25% benchmark that has typically been used in smaller class action settlements. *See Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (in common fund cases, "we have established 25% of the common fund as the 'benchmark' award for attorney fees."). *Cf. Gottlieb v. Barry,* 43 F. 3d 474, 487 (10th Cir. 1994).

The proposed 30% payment to class counsel is unreasonable because counsel represents a huge number of class members who allegedly recover a total of $37 million. Large settlements typically have lower percentage awards, because plaintiffs' attorneys enjoy economies of scale in larger settlements. Although attorneys' awards are left to the court's discretion, such awards typically "involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237, 256 (1985); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1297–98 (9th Cir. 1994); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 350–51 & nn.75, 76 (N.D. Ga. 1993), and cases cited therein (listing declining percentages based on case law). There's a simple reason for this. "It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). "There is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct

relationship to the efforts of counsel." *Id.* (quoting *In re First Fidelity Securities Litigation*, 750 F.Supp. 160, 164 n. 1 (D. N.J. 1990)).

The 30% figure is also unreasonable because of the history of this case. Although the settling parties arrived at an agreement over four years ago, in 2009 the other defendants in the parallel actions—who refused to settle—won in court. *In re New Motor Vehicles Canadian Export Antitrust Litigation,* 632 F.Supp.2d 42 (D. Me. 2009) (class counsel, according to the law of the case, lost on summary judgment because they could not provide the necessary common proof). This suggests some degree of weakness in class counsel's case. In particular, this loss at trial invites the inference that there is no reason for the sum of fees and expenses to rise above the standard 25% benchmark.

Furthermore, the settlement agreement contains a 'clear sailing' clause that stipulates that attorney awards will not be objected to or contested by opposing parties. As the First Circuit has held, "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F. 2d 518, 525 (1st Cir. 1991). The implication of "absence of adversariness makes heightened judicial oversight of this type of agreement highly desirable. Furthermore, the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Id.* It is "self-evident" that a clear sailing clause should "put a court on its guard." *Id.*

In short: in the face of the triple threat that this settlement agreement presents to the court — an award to class counsel that is significantly above judicial norms, emerging from a settlement that is the last remainder of failed companion actions; a large number

of class members that should create significant economies of scale for the class attorneys; and a clear sailing agreement of the kind that calls for aggressive judicial scrutiny — the court risks abusing its discretion if it grants the agreement's hypertrophied fee request.

## CONCLUSION

This proposed settlement treats all parties involved satisfactorily, with the exception of the class members in whose name it is brought. Regrettably, one portion of the settlement that should go to class members will be consumed by a *cy pres* award that is defective in multiple respects. Another portion of the settlement that should go to class members will be devoured by oversized attorneys' fees. This settlement is generous with *cy pres* awards and attorneys' fees, but that generosity cannot be reconciled with class counsel's duty under Rule 23 (a) (4) to "fairly and adequately protect the interests of the class." Class counsel has failed to abide by its fiduciary responsibilities towards the class in crafting this proposed settlement; therefore, this court should carry out its own fiduciary responsibilities by rejecting it.

Dated: January 28, 2010

Respectfully submitted,

*/s/ Daniel Greenberg*
Daniel Greenberg
(AR BAR 2007193)

**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
DnGrnbrg@gmail.com
(501) 588-4245
Attorney for Objector Theodore H. Frank

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the ECF system, with the advice and assistance of the staff of the Clerk's office.

I hereby further certify that on this day I caused a true and correct copy of the foregoing to be served via First Class Mail upon addressees designated below.

Clerk of the Court
United States District Court
District of Maine
156 Federal Street
Portland, ME 04101

Canadian Export Antitrust Litigation
c/o Gilardi & Co. LLC
Box 808061
Petaluma, CA 94975-8061

DATED this 28th day of January, 2011.

_(s) Daniel Greenberg_

Daniel Greenberg