**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| IN RE NEW MOTOR VEHICLES<br>    CANADIAN EXPORT ANTITRUST<br>    LITIGATION | ]<br>]<br>] | CIVIL NO. 2:03-MD-1532-DBH |

**SUPPLEMENTAL DECISION AND ORDER ON PROPOSED SETTLEMENTS
AND PLAN OF ALLOCATION FOLLOWING ADDITIONAL BRIEFING**

In my Order of April 13, 2011, following the fairness hearing on two settlements and a plan of distribution, I said that I could not approve the Toyota and CADA settlements that released Hawaii state law claims, because the Hawaii Attorney General had not been involved, a necessity under Hawaii law. I also expressed concern over the cash allocation of the settlement funds (allocation is not part of the settlement agreements) in light of the fact that residents of some jurisdictions that permit indirect purchaser recovery were not sharing in the cash allocation. I mentioned in particular Alabama, District of Columbia, Florida, Iowa and North Carolina. Following my Order, I have received:

1.  Correspondence from the Hawaii Attorney General waiving that office's right to be part of settlement proceedings, but on the premise that Hawaii residents then will be added to the cash allocation, see Letter dated June 1, 2011, to Judge D. Brock Hornby from Hawaii Attorney General David M. Louie (Docket Item 1187);

2. A filing by the Attorneys General for the states of Alabama, Florida, Iowa, North Carolina and for the District of Columbia that seeks to have their residents added to the cash allocation, see Am. Resps. of the States of Alabama, Florida, Iowa, North Carolina and Washington D.C. to Proposed Plan of Allocation (Docket Item 1186);

3. A response from the plaintiffs[1] that

a. says that the Hawaii Attorney General's letter allows the settlement to go forward vis-à-vis Hawaii state law claims, yet without any cash allocation to Hawaii residents; or, in the alternative on that issue, asks for the opportunity to try to negotiate with Toyota and CADA to remove the release of Hawaii state law claims from the settlement agreement; and

b. recognizes that some omitted jurisdictions do allow indirect purchaser recovery but justifies not including their residents in the cash allocation on the basis that

    i. Alabama law does not justify recovery due to its limitation to intrastate commerce;

    ii. Florida residents should not participate because of Florida's loser pay rule, and the fact that here the plaintiffs lost most of their lawsuit;

    iii. Individuals did not step forward to be class representatives for the residents of these other jurisdictions;

---

[1] When I use the term "plaintiffs," I am referring to the named plaintiffs as represented by the lead counsel I have appointed in this lawsuit. I recognize that other class members now have appeared as objectors through their lawyers, and certain Attorneys General also have appeared on behalf of their residents.

  iv. The plaintiffs' original "crucible of litigation" argument that I found wanting is still valid;

  v. It is reasonable either to include or not to include these jurisdictions and I should therefore accept the plaintiffs' decision not to include them; and

  vi. If I reexamine this issue, then on account of <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 130 S. Ct. 1431 (2010), I will have to reexamine earlier rulings that I made in the course of the lawsuit that certain state substantive laws would not allow recovery of damages through class actions, <u>see</u> Pls.' Supplemental Br. on Plan of Allocation (Docket Item 1181);

 4. A response from objector Kevin Luke that

 a. reasserts his claim on behalf of Hawaii residents and criticizes the plaintiffs' characterization of the Hawaii Attorney General's position;

 b. asserts that the additional jurisdictions identified in my Order of April 13, 2011 should also be included in the cash allocation; and

 c. asserts that I should reconsider whether other states (Georgia, Montana, New York, Utah) should receive a cash allocation in light of <u>Shady Grove</u>, <u>see</u> Kevin Luke's Resp. to Pls.' Supplemental Br. on Plan of Allocation (Docket Item 1183); and

3

5. An objection from Joey Hutto, Jeanne Finn, Channing Carder, Deborah Colburn and Wayne Phillips/American Electric Motor Service, which joins in Luke's arguments and asserts on behalf of three Alabama resident objectors that Alabama residents should be included, see Resp. to Pls.' Supplemental Br. on Plan of Allocation by Unnamed Class Members (Docket Item 1184).

**ANALYSIS AND DECISION**

I conclude that residents of two of the additional states that I identified in my Order of April 13, 2011, should not be included in the cash allocation. The Alabama limitation of its state law claims to intrastate activity[2] negates the claims of its residents to recover for what is clearly interstate activity as alleged in the pleadings and record of this case. The Alabama state law claims in this case are not worth anything given Alabama's restrictive law. That material difference justifies excluding them from the cash allocation.[3] Moreover, Florida's provision that a loser must pay devalues the worth of its state law claims. This was a very high risk lawsuit; the plaintiffs did in fact lose most of the lawsuit, with only two defendants settling, out of many. Pursuing the Florida claims could have significantly reduced the plaintiffs' recovery after

---

[2] See Abbott Laboratories v. Durrett, 746 So.2d 316, 339 (Ala. 1999) ("we hold . . . that [the Alabama antitrust statute] does not provide a cause of action for damages allegedly resulting from an agreement to control the price of goods shipped in interstate commerce"); Griffiths v. Blue Cross and Blue Shield of Alabama, 147 F. Supp. 2d 1203, 1220 (N.D. Ala. 2001) (citing Durrett).

[3] See, e.g., PRINCIPLES OF AGGREGATE LITIGATION § 1.04, cmt. f (2010) ("Ideally, the amount of compensation a claimant receives should reflect the merits of the claim itself, including the likelihood that the claimant would prevail at trial and the amount the claimant would win.").

paying the defendants' attorney's fees and costs.[4]  I conclude that the Florida claims were therefore worth substantially less than those of other indirect purchaser states.

I reject the suggestion that Shady Grove should cause me to rethink either my careful examination of the settlement allocation the plaintiffs proposed, or cause me to revisit earlier rulings in the lawsuit.  It is not at all clear that Shady Grove would lead to a change in my earlier rulings.  That would be controlled by Justice Stevens' concurring opinion, because it was his concurring opinion that cast the tie-breaking vote in Shady Grove.  (Moreover, Justice Stevens has now been succeeded by Justice Kagan.)  I believe that my rulings were correct when they were made, no objector raised the issue in response to the notice of hearing, it came up only on the plaintiffs' in terrorem effort to persuade me to back off my questioning of their allocation, and then objector Luke joined in.  No one has provided the careful legal analysis that would be required to assess the arguments.  Under those circumstances, I conclude that the value of these claims was properly assessed under the law as it was then, pre-Shady Grove.

As for Hawaii, I do not understand how the plaintiffs can conclude that the Hawaii Attorney General's letter authorizes them to proceed in a settlement that will give Hawaii residents no cash benefit.  I said earlier that Hawaii's mid-Pacific Ocean location made plausible the plaintiffs' assertion that its residents

---

[4] Florida law provides that in any civil litigation arising under the Florida Deceptive and Unfair Trade Practices Act "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney fees and costs from the nonprevailing party."  Fla. Stat. § 501.2015(1).

5

would have had additional obstacles to overcome in order to show that the alleged conspiracy affected list prices on new vehicles in Hawaii. Decision and Order on Proposed Settlements and Plan of Allocation at 20 (Docket Item 1175). No one has since done any work on this issue. Not the plaintiffs, not the objector and not the Hawaii Attorney General. I had expected that at least the plaintiffs would provide something from their expert to back up their plausible assertion.[5] They did not, resting instead on the plausibility as grounds for excluding Hawaii. That is not sufficient. The plaintiffs have the burden "to establish that the settlement is fair and reasonable to the absent class members who are to be bound by that settlement." PRINCIPLES OF AGGREGATE LITIGATION § 3.05(c). Moreover, since the Hawaii Attorney General has now waived any failure to comply with his right to notification, the plaintiffs' failure to notify him is no longer grounds for excluding Hawaii residents from the settlement agreements. Because the only way the plaintiffs could settle the Hawaii claims is with the consent of the Hawaii Attorney

---

[5] In his report at the time of original class certification, the plaintiffs' expert had said: "The effect would be nationwide because barriers to trade within the U.S. are limited to modest transportation costs and there is a single nationwide MSRP for each vehicle." Expert Report of Robert E. Hall ¶ 14 (Docket Item 788). It is "plausible" that vehicle transportation costs to Hawaii are not "modest." In his report, Hall referred to "many U.S. regions including the Atlantic, Central, Eastern, Great Lakes, Pacific, and Western regions" and "states as distant from Canada as Alaska, California and Texas." Id. ¶ 52. It is unclear where Hawaii fits within that discussion. In his rebuttal report, he stated that "exported vehicle registrations are not limited to the U.S.-Canada border area, but rather are spread throughout the U.S." Rebuttal Report of Robert E. Hall ¶ 20 (Docket Item 788-1). But his example was Buffalo to Boston, and he asserted that "[b]rokers in the U.S. routinely acquire vehicles in one part of the country and sell them in another part of the country." Id. ¶ 37. Again, it is difficult to place Hawaii in this discussion. The defendants' expert believed that there was far more regional variation than did the plaintiffs' expert, Expert Report of Joseph P. Kalt § III(C)(8) at 38-40 (Docket Item 305-3) (CD on file with the Clerk's Office at Tab 1-Pt. 1), but his report did not really deal with Hawaii except in his zip code analysis, Figures 32-33 to Expert Report of Kalt (CD on file with the Clerk's Office at Tab 2-Pts. 4-5), which showed very few Canadian vehicles going into Hawaii at all, with the possible exception of pickup trucks.

General and because he had the authority to bring a class action on behalf of indirect purchasers, I see no reason why the damages period should be shortened for Hawaii residents as previously argued. See 1980 Haw. Sess. Laws 91-93 (Act 69); 1987 Haw. Sess. Laws 837 (Act 274); 2002 Haw. Sess. Laws (Act 229).

Hawaii permits indirect purchaser recovery. Decision and Order on Proposed Settlements and Plan of Allocation at 18. The plaintiffs concede that the laws of the District of Columbia, Iowa, and North Carolina also permit indirect purchasers to recover. I therefore proceed to consider the asserted grounds for leaving residents of these jurisdictions out of the cash allocation.

The plaintiffs argue that their proposed plan of distribution properly distributes assets only to residents of those jurisdictions that survived the "crucible of litigation," that these jurisdictions did not survive that crucible, and/or that it is reasonable either to include or to exclude them in the cash allocation, and that I should therefore respect the plaintiffs' decision. I pointed out earlier that some of these jurisdictions did not "survive the crucible of litigation" because the plaintiffs never subjected them to that crucible. In fact, the District of Columbia[6] and North Carolina did survive the crucible of litigation in the sense of surviving motions to dismiss based on the substance of their state or local laws allowing indirect purchaser recovery, see Order on Defs.' Mot. to Dismiss Certain Claims in Pls.' Second Am. Compl. (Docket Item

---

[6] For ease of reference, I will sometimes use the generic terms "state" and/or "state law," even though that terminology is a misnomer for the District of Columbia.

173). Their claims were nevertheless withdrawn from the lawsuit later, before the motion to certify individual state classes, apparently because the plaintiffs had no class representatives from those jurisdictions. Pls.' Supplemental Br. on Plan of Allocation at 9.[7] They also had no class representatives from Hawaii and Iowa.

I recognized in my Order of April 13, 2011, that the plaintiffs could not obtain certification of a *litigating* class for the state law claims of residents of states where they had no class representative. Thus, residents of those states would not have participated in any favorable or unfavorable judgment. But here we are talking about a *settlement* class, and the plaintiffs have purported to settle the state law claims of the residents of *all* states, even those where there was no named plaintiff or client who would have been subject to a favorable or unfavorable judgment. In their settlements, the plaintiffs might have left those residents out of the settlement class, just as they did for the litigating class, but they chose not to do so. Perhaps the defendants required their inclusion as a condition of the settlements or the settlement amounts. But consequences flow from agreeing to it. "In class actions, . . . named plaintiffs owe fiduciary duties to absent class members"; class counsel is a "fiduciary to a client who is also a fiduciary"; and "a named plaintiff who is not personally interested in a particular form of relief may nonetheless in some

---

[7] The plaintiffs suggest possible reasons why no one came forward as a named plaintiff from the District of Columbia and Iowa—the District of Columbia because there are only three dealers there, Pls.' Supplemental Br. on Plan of Allocation at 8 n.7; and Iowa because of its restrictive anti-solicitation rules. Id. at 9 n.10. Neither of those factors justifies excluding those jurisdictions' residents from the cash allocation for a settlement class.

circumstances have to pursue it if others stand to gain." PRINCIPLES OF AGGREGATE LITIGATION § 1.04 Reporters' Note cmt. a (citing authorities). The plaintiffs have given me no reason to devalue the state law claims of residents of these jurisdictions. Having decided to surrender these (unasserted) claims to the defendants, they were required to assess their value for the settlement distribution. I am not persuaded that the choice whether to include them or exclude them in the cash allocation could go either way, and that I should therefore defer to class counsel's choice. "The burden is on the proponents of a settlement to establish that the settlement is fair and reasonable to the absent class members who are to be bound by that settlement." PRINCIPLES OF AGGREGATE LITIGATION § 3.05(c). The plaintiffs have not met their burden on this aspect. And the plaintiffs concede that Iowa has a "strong statute permitting class action lawsuits by indirect purchasers." Pls.' Supplemental Br. on Plan of Allocation at 9.

Moreover, the court has a responsibility to determine that "class members are treated equitably (relative to each other) based on their facts and circumstances" and that the settlement is fair "to every substantial segment of the class." PRINCIPLES OF AGGREGATE LITIGATION § 3.05(a)(3) and (b). Some appellate courts have said that the judge reviewing the settlement is also a "fiduciary of the class." <u>Reynolds v. Beneficial Nat'l Bank</u>, 288 F.3d 277, 279-80 (7th Cir. 2002) (citing cases). Commentators suggest that "[b]ecause, in the settlement context, neither the class nor the defense will have any interest in raising adequacy concerns with the court, the court may need to take an active

9

role in investigating the adequacy of representation. . . ." PRINCIPLES OF AGGREGATE LITIGATION § 3.05, cmt. b. "[T]he court should look at whether class members are treated equitably among themselves . . ."; and "a broad release going beyond the claims that are the subject of the litigation may be inappropriate in light of the nature of the recovery under the proposed settlement." Id.

Of course I wish that the decision to exclude residents of these jurisdictions had been highlighted earlier, or that I had noticed it earlier, before the expensive notice, costing $1.3 million, went out to the national class. See Supplemental Decl. of Dennis Gilardi Re: Design and Effectiveness of Notice Plan ¶ 34 (Docket Item 1108-3); Pls.' Supplemental Br. on Plan of Allocation at 3. The original notice was large and national in character, relying on national magazines and newspapers, the internet and newswires. Id. I have no desire to see that expense incurred a second time, thereby reducing the size of the ultimate distribution to the class members. I have discretion under Rule 23(e) not to require new notice to the *entire* class, especially here where there are no rights to be preserved, and no likelihood that someone now would want to opt out because the individual cash recovery may turn out to be somewhat lower.[8] But I have no idea what would be involved in providing reasonable notice

---

[8] Principles of Aggregate Litigation suggest new notice to "class members who may be substantially adversely affected by a change" that modifies the terms "in any material way," but not where the new terms result in "benefits not substantially less than those proposed in the original settlement." PRINCIPLES OF AGGREGATE LITIGATION § 3.05(e) and (f) and cmt. e. I conclude that the modifications here are not material because, although increasing the number of people eligible will reduce the amount each individual can recover, the statute of limitations has run on all these claims and there is therefore no reason to decide to opt out now, merely because the amount recovered will be somewhat less. The dollar recoveries are modest in either event.

10

focused on the residents of the District of Columbia, Hawaii, Iowa and North Carolina, and in administering the additional resulting claims. (Administration of the original claims process was estimated to cost between $509,581 (if 1% of eligible claims were filed) and $1,681,109 (if 10% of eligible claims were filed). See Supplemental Decl. of Dennis Gilardi Re: Settlement Administration ¶ 28 (Docket Item 1108-4).) The Attorneys General seem to assume that new notice would be only a fraction of the cost of the original notice.[9] But notice costs are not necessarily scalar and are not governed by "simple mathematics." I do not know that cheaper partial notice is available.

Before I decide what to do on this question of cash distribution to residents of additional states,[10] I conclude that it is reasonable to ask the Attorneys General of the District of Columbia, Hawaii, Iowa and North Carolina to propose what would be fair notice to the residents of their jurisdictions and provide me information on its mechanics and cost. They are of course free to consult with the plaintiffs' counsel in doing so, and the plaintiffs' counsel can present a response and/or an alternative. *I emphasize to all that it is important to find a fair and practical solution.* The plaintiffs shall also provide information

---

[9] "If the cost of noticing 50 states and the District of Columbia was $1.3 million, simple mathematics would indicate that a renotice in the states identified by the court would cost approximately $150,000, exclusive of the cost of administering additional claims . . . ." Am. Resp. of the States of Alabama, Florida, Iowa, North Carolina and Washington D.C. to Proposed Plan of Allocation at 3.

[10] It is well-settled law that a judge reviewing settlement agreements cannot dictate amendments to the settlement agreements, only accept or reject them (albeit notifying the parties how a rejection could be cured). PRINCIPLES OF AGGREGATE LITIGATION § 3.05(d) and cmt. d. Here, however, the plan of allocation is not part of the settlement agreements. Only the Hawaii issue involves terms of the settlement agreements, and then only if Hawaii is to be excluded. Therefore, I conclude that I do have authority under Rule 23(e) to order how the settlement proceeds will be allocated.

on increased administration costs if claims are now allowed from the residents of these four jurisdictions.  The filings shall be made by August 31, 2011.

**SO ORDERED.**

**DATED THIS 1ST DAY OF AUGUST, 2011**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**
